TUNSTALL et al. v. STEARNS COAL CO.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1911.)

No. 2,006.

1. MASTER AND SERVANT (§ 339*)—INTERFERENCE WITH RELATION BY THIRD PERSONS—ENTICING SERVANTS TO LEAVE EMPLOYMENT.

The limits of lawful persuasion when exercised by employés in the course of a strike by them to force from their employer better terms or conditions for themselves, and as a means collateral to their side of the conflict, may well be wider than are such limits in a case where there is no complaint by employés, but where the strike is directed by officials

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of an extended labor organization for the primary purpose of compelling its recognition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1283; Dec. Dig. § 339.*]

**2. APPEAL AND ERROR (§ 840\*)—REVIEW—GRANT OF INJUNCTION.**

On appeal from an injunction order, the Court of Appeals will not completely construe the order, to determine whether its language might cover a specific suggested act. It will only ascertain whether the order, restricted to its fairly certain meaning, is justified by the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3301–3314; Dec. Dig. § 840.*]

**3. MASTER AND SERVANT (§ 339\*)—INTERFERENCE WITH RELATION BY THIRD PERSONS—ENTICING SERVANTS TO LEAVE EMPLOYMENT.**

The action of members of a labor organization who were not at the time in complainant's employ and some of whom had never been, but were promoting a strike for the primary purpose of compelling a recognition of the organization, in paying money to employés of complainant who were not members of the union for the sole purpose of inducing them to leave its employment, and to others seeking employment to induce them not to enter complainant's service, *held* not within the limits of lawful persuasion, and properly enjoined.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1283; Dec. Dig. § 339.*]

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

Suit in equity by the Stearns Coal Company against J. O. Tunstall and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

Walter S. Roberts (Jesse L. Rogers, on the brief), for appellants. J. N. Sharp (Faulkner & Sharp, on the brief), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. The appellee, the Stearns Coal Company, a citizen of Michigan, was engaged in operating several different coal mines in Kentucky. These mines were conducted as "open mines," and all terms of employment were fixed by direct contract between the company and its employés. In the season of 1908 the local officials of the trade union or labor organization known as the "United Mine Workers of Amercia," presented to the Stearns Company a proposed wage scale for the ensuing year. The company refused to treat with this organization, whereupon a strike was declared by the organization against the company, and those of its employés who were members of the union left work. In December, 1908, this bill was filed by the company against the appellants. Some of them were former employés who had so quit work, and others were representatives of the United Mine Workers who had never been in the company's employ, but came to the vicinity to manage the strike. The bill alleged a conspiracy to break up the company's business, and acts of violence and intimidation in furtherance of the conspiracy. Upon the filing of the bill, a restraining order was made, and, after a hearing, a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

preliminary injunction issued. This order and this injunction were directed, in broad and general language, against violence, threats, and intimidation. This appeal involves no question under the proceedings so far stated.

' Shortly afterwards, the Stearns Company filed an amended bill, making the additional complaint that the defendants were, by the use of money, hiring to discontinue work the company's employés who were remaining at work, and hiring to remain away or go elsewhere others who were intending to go to work in the company's mines. It was not alleged that any time contract relation existed between the company and the men so hired. Upon a motion hearing on this amended bill and affidavits in support and an opposing answer and affidavits, the defendants were enjoined from—

"hiring or employing any of the employés of the plaintiff to quit the service of the plaintiff, and enjoined and restrained from hiring and paying any persons who are seeking employment of the plaintiff from engaging in the employment of the plaintiff. In other words, * * * from bribing the employés of the plaintiff to cease work for the plaintiff, or from bribing persons who are willing and desirous and about to enter its employ from so doing."

From the order for this further preliminary injunction the defendants appealed.

The appellants' counsel have presented and asked us to decide the broad question whether paying money bonuses, in aid of an existing strike and in connection with inducing workmen to leave their employment, is, or may be, within the limits of that persuasion which is, in such cases, recognized as lawful. We do not think this question, so stated, is presented by the record, or can properly be decided.

[1] 1. So far as the record in this case shows, there was no complaint by any of the company's employés regarding wages or the conditions of service, nor does it appear that the demanded wage scale was higher than the wages being paid. It is the fair inference from the record that the contest was wholly over "recognition." A concerted effort by strikers to cripple an employer's business, by persuading his workmen away from him, is an injury which requires justification, but it is permitted because it is incidental to the full exercise of the employés' clear and established right to strike for the improvement of their own condition. Such unlawfulness as there might otherwise be in that campaign of persuasion is merged in the dominant right to promote directly their own interest by effectually carrying on their contest. It may well be that the limits of lawful persuasion, when exercised by employés in the course of a strike by them to force from their employer better terms or conditions for themselves and as a means collateral to their side of the conflict, are wider than are such limits in a case where there is no complaint by employés, but where the strike is directed by officials of a labor organization for the primary purpose of compelling its recognition. In the one case, the benefit to the striking employés through winning their contest is immediate and direct; indeed, its primary purpose is to improve the specific, existing conditions, and the injury to the employ-

er's business is measurably incidental. In the other case, injury to the employer's business is the primary object, sought for the purpose of compelling a result said to be for the benefit of the working miners of several states grouped as a class, and for the benefit of these employés of this employer only in a remote or contingent or uncertain way. To say that every weapon lawful in a conflict between an employer and his workmen, over a question in which each has a direct personal interest, is also lawful as between him and a labor organization to which his men do not belong, is to say that capital and labor, as respective classes, are so in conflict that each has a lawful interest in injuring the other. This we are not prepared to do.

[2] 2. A considerable part of defendants' acts, shown by this record, consisted in furnishing money said to be for the expenses of some of the men in moving themselves and their families to other coal mining fields where they might have employment. It is urged that if one of the company's miners made up his mind, even as the result of persuasion by the defendants, that he desired to leave Kentucky and go to Oklahoma where he believed he could get better employment, probably in a union mine, it was perfectly lawful for the defendants, as it would be for any other friend or associate, to lend or to give him money sufficient for that purpose; and that in such case the essential thing would be the persuading the employé to leave, while the furnishing of the necessary money would be only an incident to the carrying out by him of his desire. This question, likewise, is not presented by the record, because the order of the court below does not clearly appear to us to forbid a transaction which was, in good faith, of such character. We are not called upon to construe the order completely, nor to say whether all the conduct of the defendants would or would not be within its prohibition, but only to ascertain whether the language of the order, restricted to its fairly certain meaning, is justified by the record.

3. It is further urged that the right of the union to promote its own welfare entitles it to solicit and persuade workmen to join the union, and entitles it to promise them regular, or even exceptional, benefits if they will join and submit themselves to its discipline. Here, again, a fair construction of the order, in the light of the facts shown by the affidavits, does not present the question urged. Few, if any, of the proved instances of money payment were collateral to proselyting effort. They did not pertain to an effort to increase the union's membership.

[3] 4. Bearing in mind the considerations which we have mentioned, we find that the order restrains men who are not now in the company's employ and some of whom never have been, and who are promoting a strike which is not by the employés for the benefit of themselves, from carrying on a plan to destroy the company's business by paying sums of money to workmen as the controlling inducement for them to quit their work; that is, in cases where they had not been otherwise persuaded to leave, or to form a desire to leave, their employment.

Counsel for appellants concede that such acts were for the pur-

pose of compelling the company to yield its position or close its mine, and frankly say that to sustain their position in this respect will be going further than has been done in any decided case; but this, alone, is no reason for refusing to take the additional step.

They also argue that, if we hold such bonus payments by these appellants unlawful, it must follow that the payment of abnormal wages by employers to men hired to take the place of striking workmen will be for the same reasons unlawful. This does not follow. The situations are not essentially analogous. In the present case we are dealing with wholly independent payments of money, not in the course of carrying on an established business or for the direct benefit of those making the payment, but with the primary purpose to injure another and with only a secondary or collateral reflex self-benefit. In the supposed case, we would deal with payments primarily for the maintenance and promotion of the regular business of those paying, and only remotely operating to the injury of another, and with payments in which the excess was collateral to the regular, normal amount, and was made necessary by the action of the opposing interest. There is no sufficient parallelism to make one the criterion for the other.

We can be more helped by supposing, as the true converse case in which the same rule should work, that an employer or group of employers, with the sole and only purpose of breaking up a union of laborers, pays money to the union's leaders to induce them to desert the union. It would seem that, if the conduct of the appellants now under consideration is permissible, they could not reasonably object to such acts by an employers' association.

There is also close analogy to the situation in the boycotting cases. Where persons directly engaged in a conflict with a dealer agree together not to patronize him, the unlawful element of combination to injure is merged in the stronger, lawful element of direct self-interest; but, when they attempt to destroy his trade generally, their self-benefit becomes more remote and comparatively less, while the element of injury to another becomes primary, dominant, and, therefore, characterizing. So, here, there is no pervading and characterizing promotion of direct self-interest, but the injury to the company is the primary and immediately controlling element.

We see no sufficient object in a discussion of the cited precedents, no one of which seems fully authoritative. Useful discussions of the underlying principles and of their proper application will be found in Everett Waddey Co. v. Typographical Union, 105 Va. 188, 53 S. E. 273, 5 L. R.A. (N. S.) 792; Iron Moulders' Union v. Allis-Chalmers Co. (C. C. A. 7) 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A. (N. S.) 315; Barr v. Essex Trade Council, 53 N. J. Eq. 101, 30 Atl. 881; Glass Co. v. Glass Bottle Blowers' Ass'n, 77 N. J. Eq. 219, 79 Atl. 262; Loewe v. California Federation (C. C.) 139 Fed. 71; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488.

A consideration of these and other decisions leaves us with the conviction that there is no logical theory by which the conduct of the

appellants, now under specific examination, can be considered "lawful persuasion."

In the recognized instances of lawful persuasion, the conspiracy to injure the employer's business and the actual injury to such business are oftentimes no less clear than in the case of threats and intimidation, but the resulting injury is considered to be lawful because it is incidental to the equal right of the employés to win their fight. In every case where this right of persuasion is sustained, it is because, in the end, the employé exercises his own free will. If he is persuaded that it is for his best interests to work elsewhere or not to work, he has a right to follow out his conclusion; but, if his conclusion is not reached as the result of his free choice, but that choice is controlled either by a threat or by the promise of an outside, foreign, independent reward, there is a lack of that foundation upon which the theory of "lawful persuasion" must stand.

The order appealed from must be affirmed, with costs.