**CITY NAT. BANK OF DALLAS v. FOLSOM.**
(No. 8980.)

(Court of Civil Appeals of Texas. Dallas. Jan. 20, 1923.)

1. Pleading ⊚⇒252(2)—Temporary injunction regarded as granted on amended petition subsequently filed.

Where a petition for injunction was amended after the temporary injunction had been issued, the amended petition superseded the original petition, and related back to the time when the original was filed, so that the injunction must- be deemed .to have been granted on the amended petition.

2. Landlord and tenant ⊚⇒82—Clause fixing damages for holding over does not permit retention of possession.

A clause of a lease requiring the lessee to yield immediate possession at termination of the lease, and, failing so to do, to pay as liquidated damages while possession is withheld a stipulated sum, does not give the lessee the privilege of holding over.

3. Injunction ⊚⇒16 — Can enforce legal right only if there is no plain, adequate remedy at law.

Equity can enforce a clear legal right of petitioner by injunction only if petitioner has not a plain and adequate remedy at law which is as efficient as the remedy in equity.

4. Injunction ⊚⇒46—Issues against wrongful disturbance of possession of premises.

One who is in. possession of premises can secure an injunction restraining a wrongdoer from attempting to invade his possession or to destroy the use and enjoyment of the premises, since he has no plain and adequate remedy at law.

5. Injunction ⊚⇒35(2)—Does not issue to oust wrongdoer from possession of premises.

Where a wrongdoer is in possession of premises, the remedy at law of the owner out of possession is plain, adequate, and as efficient to the ends of justice as the remedy in equity, so that injunction will not be issued to oust the wrongdoer.

6. Injunction ⊚⇒35(2) — Mere exclusion of wrongdoer does not give "possession" authorizing injunction.

Where a tenant of an office was holding over after the expiration of his tenancy, notwithstanding the landlord's desire to rent the office to another, the mere exclusion by the landlord of the tenant by means of changing the lock on the door, but without removing the tenant's property from the office, was not such possession of the premises as entitled the landlord to injunction against the tenant, since in such a case the term "possession," which is ambiguous in its meaning because of the varied uses made of it, would embrace not only the exclusion of the tenant, but also the exclusion of the things with which he used and occupied the premises, so 'as to permit the landlord to enter into their use and enjoyment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Possession.]

Appeal from District Court, Dallas County; J. E. Gilbert, Judge.

Suit for injunction by the City National Bank of Dallas against Dr. A. I. Folsom. From an order dissolving a temporary injunction, plaintiff appeals. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

JONES, C. J. This appeal is prosecuted from an order of the trial court dissolving a

temporary injunction, issued on the presentation of appellant's petition, November 4, 1922. The injunction restrained appellee from asserting any further rights as a tenant to certain described offices in the Wilson Building, and also restrained him from using any of the general facilities of the Wilson Building which he had theretofore used in the capacity as tenant. The injunction also commanded him to remove from appellant's property and from the offices theretofore occupied by him all his personal effects kept in the offices and in the vault space allowed to his use as such tenant.

The following statement of the case is deemed sufficient: The Wilson Building is an office building in the city of Dallas, and appellee, a physician, on November 1, 1919, entered into possession of the offices in said building described in appellant's petition under a written rental contract for a term of three years, the term expiring November 1, 1922. Among other provisions of the lease contract are the following:

"Seventh. At the termination of this lease by lapse of time or otherwise, to yield up immediate possession to said lessor, and failing so to do, to pay as liquidated damages for the whole time such possession is withheld, the sum of $3 per day, but the provisions of this clause shall not be held as a waiver by said lessor of any right of re-entry, as hereinafter set forth, nor shall the receipt of said rent, or any part thereof, or any other act of apparent affirmance of the tenancy, operate as a waiver of the right to forfeit this lease and the term hereby granted for the period still unexpired for breach of any covenant herein. * * *

"It is agreed between the parties hereto that if default be made in the payment of the rent above reserved or any part thereof, or in any of the covenants or agreements herein contained, to be kept by the said lessee, the said lessor may, at any time thereafter, without notice, declare said term ended and re-enter said leased premises or any part thereof, either with or without process of law, and expel the said lessee, or any person or persons occupying the same, using such force as may be necessary so to do and repossess the said premises again as before this lease, without prejudice to any remedies which might otherwise be used for arrears of rent or for breach of covenant."

At the time of the execution of the rental contract, J. B. Wilson was the owner of the building, but he died during the life of the contract. At his death appellant was made trustee for the heirs or legatees of the said J. B. Wilson, and in such capacity, and in behalf of such heirs or legatees, it brings this suit. W. R. Page was the manager of the Wilson Building, and, as such, had full power to make rental contracts and to give all legal notices to tenants in reference to the terms of their contracts, and also direct them to vacate their space in said building.

Approximately three months before the expiration of appellee's lease, Mr. Page, as such manager, directed a letter to appellee, reminding him that his rental contract would expire on November 1st of that year, and inclosing him a new rental contract for another period of three years, beginning at the expiration of his old contract, and requesting that he execute same. The new contract was substantially the same as the old, except that it increased the rent from $87 per month under the old contract to $108.75 per month under the new. Not receiving any response to this letter, another similar letter was addressed by Page to appellee, and another blank contract inclosed. At the time these letters were sent, appellee was out of the city, and did not return to his office until some time during the month of September. He made no written reply to these letters, but sought an interview with the manager, and informed him that he would not renew the lease for a term of three years, as he had secured space in the Medical Arts Building, then under construction, and desired to remain in the offices until this building would be completed and he could occupy offices therein. This, he thought, would be some time early in the year 1923. This was unsatisfactory to the owners of the building, and appellee was informed that the only lease acceptable to the owners was the one embraced in the blank lease contract sent him, and that three years was the minimum time for which another lease of his offices could be had. On October 20, 1922, appellee was notified in writing by Mr. Page that the owners of the property desired possession of the offices occupied by him at the expiration of his lease, and he was also notified to make his arrangements to vacate at that time and remove his property from the building, as the owners were in a position to rent the space occupied by him, and would rent same, to other tenants on the same terms tendered to him.

Before the expiration of his lease, appellee attempted to get office space for the period of time desired by him in other buildings, but failed to do so. He then informed appellant that he would not vacate the offices on the date of the expiration of his lease, but would hold them, or attempt to hold them, until the time came for his removal to the other building, claiming he had a "hold-over" right under said section 7 of the lease contract by the payment of $3 per day provided therein as liquidated damages. This construction of said clause of the contract was denied by appellant, and demand was again made on appellee to vacate the offices at the expiration of his lease.

On the night of November 3, 1922, after appellant and his employés had left the offices for the night, by order of appellant, the locks on all the doors of the offices were changed, the water cut off, the light globes remov-

ed and the windows fastened down. This prevented appellee from entering the offices on the next morning except by consent of the manager or his agents, or by the use of force. At about 8:30 a. m. on November 4th, attorneys for appellant presented to the court its petition for the writ of injunction, and the court, about 8:50 a. m., placed his fiat on said petition, directing the issuance of the writ of injunction, on appellant's filing a bond, conditioned as required by law, in the sum of $1,000. The bond was executed and approved by the clerk, the writ of injunction issued and served on appellee about 11:15 or 11:30 of the morning of that day.

After the court had indorsed his fiat on the petition and directed the issuance of the injunction, but before the same was served upon appellee, appellee came to his office, and, on finding that he was locked out, immediately went and consulted his attorney, with the result that he employed a locksmith, and, by such aid, re-entered his offices, and was in same when the writ of injunction was served. Under an oral modification of the writ of injunction secured by appellee's attorney, appellee was permitted to remain in his offices pending a hearing to be had on the injunction. Such holding of the offices by appellee was at first without the consent of appellant, and, in order to hold them, appellee remained in the offices during the entire day and night, and until an agreement was reached between the parties, permitting such occupation of the offices by appellee, until the court could hear and determine the motion to dissolve the injunction.

[1] The petition for injunction was drawn on the theory that appellant had secured full possession of the offices and should be protected in its use and enjoyment of same. It is not deemed necessary to set out appellant's petition for injunction; suffice it to say that, if appellant's theory of possession is correct, its allegations are sufficient to secure the relief sought. However, on November 8th, after appellee had regained entrance to his offices and was occupying them in the manner above stated, appellant filed an amended petition making fuller allegations in reference to its ground for relief, but showing that appellee was then occupying the offices, alleging, however, that such occupancy was without its consent, without any right whatever, and in defiance of the court's order. This amended petition supersedes the original petition, and relates back to the time when it was filed. On the motion to dissolve, the injunction must be deemed granted on the amended petition.

[2, 3] Under the terms of the lease, appellee's right to occupy the offices in question ceased on November 1, 1922. The seventh paragraph of the lease contract does not provide for any holding over privilege, and

appellee became a trespasser after November 1, 1922, and at the time of the issuance of the injunction was wrongfully withholding the premises from appellant. At the time of the issuance of the writ of injunction, appellant had a clear, legal right to the use and possession of the leased offices, and it was clearly appellee's legal duty to surrender possession of the premises to appellant, and his failure to do so is indefensible in law. It does not necessarily follow, however, that appellant can secure its rights by appealing to a court of equity for injunctive relief. It can only do so if it has not a plain and adequate remedy at law, which is as efficient as the remedy in equity.

[4, 5] It may be stated as the settled policy of the law of this state that, if one is in possession of certain premises, and thereby capable of using and enjoying them, and another wrongfully attempts to invade this possession or to destroy the use and enjoyment of such premises, he may resort to a court of equity and secure an injunction restraining the wrongdoer, for there is available to him no plain and adequate remedy at law. It is likewise the settled policy of the law of this state that an owner out of possession of premises, even if held by a mere trespasser, cannot resort to a court of equity and by use of its injunctive powers have possession taken from such wrongdoer and transferred to the owner (Hill et ux. v. Brown et al. [Tex. Com. App.] 237 S. W. 252); the courts holding that there is available to the owner a plain, adequate, legal remedy, and as efficient to the ends of justice as the remedy in equity. The trial court on dissolving the injunction held that—

"At the time of the commencement of the suit herein and the granting of the original order of temporary injunction, the premises in dispute were not in such possession of the plaintiff as to justify the injunctive relief then and now sought."

We think the trial court correct in this conclusion.

[6] As the status of the parties existed on the evening of November 3, 1922, when appellee closed his offices and departed for the day, though appellant was legally entitled to possession of these offices, it cannot be contended that it could have secured such possession by appealing to a court of equity for a mandatory injunction. It would have been relegated to its remedy at law. Was there such a change in the status of the parties and in the possession of the disputed premises as that appellant could resort to a court of equity on the next morning when the temporary writ was granted? Appellee was locked out of the offices, and could not enter them without the use of force. This change had been brought about by appellant's agent changing the locks on the doors and doing

the other acts in reference to the premises above mentioned, without the consent of appellee. Waiving the question of appellant's right under the lease contract to thus enter the premises and prevent the re-entering of them by appellee in the manner this was accomplished, upon which question we express no opinion, did appellant thereby place itself in the category of those cases which allow an appeal for relief to a court of equity? We do not think so. The relief that appellant desired, and the relief it must have before it could enter into the use and enjoyment of the premises, was not only that of preventing the re-entering the premises by appellee, but also the removal therefrom of all his effects in order that such premises might be used by another tenant. This it only partially accomplished before it sought the injunction. The term "possession" is very ambiguous in its meaning, doubtless because of the varied uses made of the term. It is not believed that appellant was in possession of the premises in the sense in which that term is used in those cases allowing the use, occupancy, and enjoyment of the premises to be made secure by the process of injunction. In such cases as the one at bar, it is believed the term "possession" means something more than a mere exclusion from the premises of the bodily presence of the wrongdoer. It means not only his exclusion, but also the exclusion of those things with which he used and occupied the premises. In other words, before appellant could assert in a court of equity that it had possession of the premises against its holdover tenant, it must show such a condition of the premises which, without any mandatory writ commanding the removal of appellee's personal effects, it was capable of entering into their use and enjoyment; the same condition, so far as the premises are concerned, which existed previous to the possession surrendered to the tenant when he rightfully entered into possession of the premises. The character of possession appellant had at the time it secured the injunction would have been useless to it, so far as any use or enjoyment of the premises is concerned, unless it secured the mandatory feature of the injunction granted, compelling appellee to remove his furniture and fixtures therefrom.

It is fairly inferable from the facts that on the evening of November 3d appellant had determined upon a line of procedure that contemplated two things, to wit: First, by the change of locks on the doors to prevent the entrance of appellee into the offices; and, second, to secure from the court a mandatory injunction compelling him to remove his furniture and other personal property from the premises—and by these two methods secure that possession of same that would enable it again to enter into the use of the

premises. Its manager testified on the stand, "We had no intention of taking control of their effects." By "their effects" was meant the personal effects of appellee and of two other tenants whose situation was the same as his. Appellant did not intend forcibly to remove these effects, but intended to have that done by the summary process of a mandatory writ of injunction. We are therefore of the opinion that the trial court was correct in holding that appellant's possession was not such as would support its application for the injunction prayed for and temporarily secured.

We have discussed this case as conditions existed at the time the original petition for injunction was filed. We have done this for the reason that the parties in their briefs elected to so discuss the case. We are of the opinion, however, that, both on the motion to dissolve and on this appeal, conditions as they existed at the time the verified amended petition for injunction was filed should control. At that time appellee had full possession of the premises, and was making the same use of them that he had made during the lifetime of his lease. Under that petition the relief sought was to transfer by mandatory injunction the possession of these offices from appellee to appellant. It is true that appellee with force re-entered the premises, and in so doing committed a trespass, but in all such cases the holdover tenant is a mere trespasser, and his position in that respect is no greater in the one case than the other.

We therefore hold that the trial court did not abuse his discretion in dissolving the temporary writ of injunction that had theretofore been issued, and the case is affirmed.

Affirmed.