## NAGY v. BENNETT et al.   (No. 9403.)

Court of Civil Appeals of Texas. Galveston. Jan. 23, 1930.

Rehearing Denied Feb. 6, 1930.

Bryan, Colgin, Suhr & Bering, of Houston, for appellant.

Huggins, Kayser & Liddell, of Houston, for appellee Matlock.

E. T. Chew, of Houston, for appellee Bennett.

LANE, J. This suit was brought by C. E. Bennett and S. D. Matlock, jointly, on the 3d day of May, 1929, praying for the issuance of a temporary injunction to restrain appellant, Nagy, from building a fence upon and around certain lots, some of which the plaintiffs alleged were owned by appellee Bennett and the others by appellee Matlock.

The plaintiffs alleged that the lands involved and owned by them, respectively, are prairie lands lying near the town of Deer Park in Harris county; that they have been laid out into lots and blocks; that plaintiffs had for some time enjoyed the exclusive right of possession and fee ownership of such lands, and were at such time claiming and exercising the right of such possession and fee ownership; that appellant, Nagy, on or about the 28th day of April, 1929, began the building of a fence around their lands, which had been laid out into lots and blocks, and was at the time of the filing of their suit engaged in building such fence, and that, upon plaintiffs' protesting against such acts, defendant threatened to shoot them if they interfered with him in the building of the fence; that, unless defendant is restrained, they fear they will, by his acts, lose the possessory right to said properties; that, unless defendant is restrained from fencing their lands, they will suffer great and irreparable damage; that defendant has no property, real or personal, to satisfy plaintiffs for such damages as they would reasonably sustain from the threatened trespass of defendant, which said damages will be irreparable, and to prevent which they have no adequate remedy at law. Their prayer is for a temporary injunction to restrain defendant, his agents or employees, from building the fence complained of, or in any wise interfering with their peaceful possession of their said lands, and that on final hearing said injunction be made perpetual, and that they have judgment for general relief, costs, etc.

On the 18th day of May, 1929, defendant answered by general demurrer, general denial, and plea of not guilty. He specially pleaded that he had been in peaceful and adverse possession by an actual inclosure of the lots and blocks involved in the suit, cultivating and using the same, except sixteen of the lots, which he described in his answer by number.

On the 20th day of May, 1929, the cause came on for hearing at a regular term of court. Thereupon the court heard the evidence offered by the plaintiffs, and, upon the failure of defendant to offer any evidence, a temporary writ of injunction as prayed for was granted, to continue in force until further orders of the court, conditioned that the plaintiffs furnish and file with the court a good and sufficient bond of indemnity, payable to defendant, in the sum of $1,000, that they will abide the decision of the court.

The defendant has appealed, and, as reasons for a reversal of the judgment, he says: First, that the plaintiffs alleged no facts showing irreparable injury, and therefore the issuance of the temporary injunction was unwarranted; second, that it being shown by the undisputed evidence that the plaintiffs, the alleged record owners, were not in actual possession of the premises, and defendant, Nagy, the alleged wrongdoer, was fencing the same, the law affords the plaintiffs a remedy, plain and adequate, and hence plaintiffs were not entitled to the temporary writ of injunction; third, that since the plaintiff failed to prove that they held title to the land involved by a chain of title from the sovereignty of the soil, or from common source, to themselves, the court erred in granting the temporary injunction; fourth, that since the undisputed evidence shows that appellant had had possession of the land involved under fence, and the appellees having failed to show title or right to overcome or rebut the presumption of title in appellant arising from his possession, the court erred in granting the temporary injunction; fifth, that the court erred in admitting in evidence certain deeds over objection of appellant and in refusing to strike them from the record after such admission on motion of appellant, because such deeds were not filed with the papers in the cause three days before the cause was called for trial, and no proof was made of their execution as at common law. The majority of this court think that all of appellant's contentions should be overruled.

Plaintiffs alleged under oath, substantially, that, unless the injunction was issued, they would suffer irreparable damages, in that, if appellant was permitted to take possession of their land by inclosing it within a fence and thereby taking possession of the same, as he was threatening to do, they would be deprived of their possession thereof, and the rents and profits that might reasonably arise therefrom; that defendant did not have, and would not have sufficient property, real or personal, to satisfy them for the damages which they might and would suffer if defendant were permitted to carry out his threats. Such allegations were not specifically denied by defendant, and therefore stand unrebutted. McAmis v. Ry. Co. (Tex. Civ. App.) 184 S. W. 331.

The undisputed evidence shows that the lands involved were a part of the town of

Deer Park; that it had been laid out into lots, blocks, and streets, that, if appellant were permitted to build the fence as he was undertaking to do, he would close the streets and other thoroughfares leading into and through lands claimed by plaintiffs, and that recently activity in the purchase and sale of the property has become very brisk; that defendant was a man without means, and unable to respond in damages.

We think the allegations and proof were ample to show that plaintiffs, if they owned the lands, would probably suffer irreparable damages, unless the injunction should issue.

The injunction sought should not be denied merely because plaintiffs had a remedy at law by a suit of trespass to try title and sequestration. The rules denying an injunction where there is an adequate remedy at law are not by the courts of this state administering both law and equity applied rigidly. Such courts incline to hold such injunctions maintainable under our statutes, though the remedy at law should be held adequate. Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994, 995. In the case cited it is said: "It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

"The rule to be followed in determining the allowance of a temporary injunction is that of whether there is a case of probable right and probable danger to the right, as alleged, without the injunction." Dunsmore v. Blount-Decker Lumber Co. (Tex. Civ. App.) 198 S. W. 603, 604; City of San Antonio v. Hamilton (Tex. Civ. App.) 180 S. W. 162; City of Dallas v. Fry (Tex. Civ. App.) 263 S. W. 653.

We think the evidence clearly supports the finding of the court that there was a probable right to plaintiffs, as pleaded by them, and a probable danger to such right, as alleged, without the injunction.

The appellee C. E. Bennett testified without objection that he was the owner of, and had a deed to, the property alleged in his petition to be owned by him, and, further, that he bought the property in 1926 from I. E. Martin.

The appellee Matlock testified without objection that he was the owner of lots 35, 50, 62, 65, 38, and 97, outlots of the town of La Porte; that he bought the particular tract in May, 1926.

Both of said witnesses testified that they went on the land in 1926, and examined the same and made inquiry, and at that time there was no fence inclosing same, nor could they find any evidence of any one asserting a claim to the property adverse to the then owner. Matlock further testified that he had

been on the property on an average of twice a month since he bought his, and that at no time had any one ever had a fence around it or disputed his claim thereto until this claim was asserted by appellant some 2 or 3 weeks before the suit was filed.

Harris Underwood, a witness for appellees, testified that he had been familiar with this land for about 17 years, and that his cattle had ranged on the same for many years, and that the fences have always been practically down. He further stated that the fence was down until 15 or 20 days before the date of trial, and had been down for 6 or 7 years previous thereto. He said that, in addition to his cattle grazing on this land, the cattle of Frees and Allen had also run thereon, as there were no fences sufficient to turn them, and, they drifted back and forth across this prairie country. It was considered by him and other stockmen as free range.

John Draper testified that he was on the property about a year before the date of trial, and that the same was not inclosed by fence.

A. B. McCleary testified that he was on the land 7 or 8 years ago, and that there was no fence around the land, and no one claimed the same as far as he ever knew.

A. O. Blackwell testified that he had been familiar with this land for some 30 years. He testified that some time about 1920 Nagy came to him and got him to assist him in writing letters to the owners of these properties for the purpose of securing hay leases, and that in fact he did secure a number of such leases for Nagy, and that Nagy paid rent under these leases to the owners. Nagy never asserted any claim to the property adversely to the record owners as far as he knew; that Nagy also attempted in 1925 to get him (Blackwell) to give him receipts for several hundred dollars rentals on these properties, so that he could file a claim with the government during the foot and mouth disease epidemic; that he (Blackwell) refused to do so, as Nagy had not paid rentals during the years prior to 1925 for which he was making his claim; that he (Nagy) also stated to him at that time that he had not used the land for 2 or 3 years prior to 1925, and could not use the same.

J. N. Taub testified that Nagy had leased some of the land from him 7 or 8 years ago.

B. E. Norvell testified that he was on this land in 1924, and that there was positively no fence there.

F. E. Ebersole testified positively that there was no fence on the land in 1919.

G. N. Clive testified that he lived on the land adjoining the land in controversy, and that there was no fence on the same prior to 1920 or 1921, and that his cattle had run on the land since that time, as well as cattle belonging to other people. He further stated

that he had known Nagy for a number of years, and had never heard of him asserting any claim to the property.

J. I. Browning testified that his stock had run on this place for many years, as well as cattle belonging to other people; that the fence was practically always down, and had been in an extremely bad condition since 1925.

H. B. Harrison testified that prior to 1920 the land was unfenced; that in 1921 or 1922 a fence was put up, but that in a couple of years it was all down, and had been down since that time. He further testified that he had been familiar with the land during this entire period, and crossed over it many times without any difficulty, and that many different people cut hay all over that prairie. He stated positively that Nagy had never had a fence around this land for as much as 5 years, and that the same has never been cultivated or used, and that the same has been open and unoccupied prairie land since 1924.

Henry Mayfield testified that he had been familiar with this land since 1926, and that the same had not been under fence since that time. He further testified that shortly before the institution of this suit he had occasion to talk to Nagy about this property, and that Nagy replied to his request for a quitclaim to some of the outlots, and said: "Sure, that is all right, I am not claiming it"; that Nagy further stated at that time that he only owned 20 acres of property in this locality.

M. H. James testified that he was with Mayfield and heard Nagy say that he was not claiming any of this land; that he owned only about 20 acres.

In addition to the above testimony of appellees that they were the owners of the lands in question, and the volume of testimony of other witnesses that the defendant never asserted or had any claim or right whatsoever to the property, appellees also introduced duly recorded deeds showing conveyances of the above properties to them.

As we construe appellees' petition, it is not a suit in trespass to try title to the property, and therefore the entry of a judgment for either party would not be a final adjudication of the title to such property.

In section 4 of 1 High on Injunction, it is said:

"The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition and without determining any question of right, merely to prevent the further perpetuation of wrong or doing of any act."

After quoting from High on Injunction, the San Antonio court, in the case of City of San Antonio v. Hamilton (Tex. Civ. App.) 180 S. W. 160, 162, said:

"That a temporary injunction may be granted when a probable right or probable danger is shown is well settled. Such an order in no manner determines the rights of the parties on the trial, but merely preserves the status quo until those rights may be determined upon final trial on the merits. Again referring to High on Injunctions in regard to temporary orders:

"'They merely recognize that a sufficient case has been made out to warrant the preservation of the property or the rights in issue in status quo until a hearing upon the merits, without expressing, and indeed without having the means of forming a final opinion as to, such rights.'"

In City of Dallas v. Fry (Tex. Civ. App.) 263 S. W. 653, 654, it is said:

"This court is not unmindful of the rule of law that controls its actions in reviewing an appeal from a district court of an order granting or refusing a temporary injunction. Such rule is that the granting or refusing of a temporary injunction is within the sound discretion of the district court, and that court's action, in the exercise of such discretion, is not reviewable on appeal, unless it clearly appears from the record that there has been an abuse of such discretion. Sutherland v. City of Winnsboro (Tex. Civ. App.) 225 S. W. 63; Beirne v. North Texas Gas Co. (Tex. Civ. App.) 221 S. W. 301."

In Webb v. Reynolds, 207 S. W. 914, 917, Judge McClendon, speaking for section A of the Commission of Appeals, said:

"We are aware that there are circumstances under which it is not improper to prove ownership of either real or personal property by testimony that a party is the owner thereof."

In Sutherland v. City of Winnsboro (Tex. Civ. App.) 225 S. W. 63, 64, it is said:

"The granting or refusing a temporary injunction is within the sound discretion of a district court and that court's action in the premises is not reviewable on appeal, unless it clearly appears from the record that there has been an abuse of such discretion."

We overrule appellant's contention that the judgment should be reversed because of the admission of certain deeds in evidence. There are some cases which seem to hold that in cases where there is no prayer for the final adjudication of the title to land, as in suits of trespass to try title, oral testimony as to who owns the land is admissible, and that, if such testimony is admitted without objection in an injunction suit, it is not reversible error to admit in evidence a deed purporting to convey land as a circumstance to prove ownership. East Side Realty Co. v. Fowler (Tex. Civ. App.) 202 S. W. 999. However, if it be admitted that the deeds in question were

erroneously admitted in evidence, such error alone would be no cause for a reversal of the judgment. The cause was tried before the court, and there was other sufficient evidence to sustain the judgment upon the theory that in the judgment of the court such other evidence showed a probable right in appellees which was being invaded by appellant.

For the reasons above expressed, a majority of this court has reached the conclusion, not without some doubt, however, that the judgment should be affirmed, and it is so ordered.

Affirmed.

PLEASANTS, C. J. (dissenting). Accepting as generally full and accurate the statement of the case contained in the opinion of the majority, I cannot agree in the conclusion that the judgment of the trial court should be affirmed, and will state as succinctly as I can the grounds of my dissent from this conclusion.

No general rule of law is more firmly fixed in the jurisprudence of this state than that which denies the remedy of injunction in lieu of other adequate remedies provided by our statutes for the recovery of title or possession of land.

There is a well-recognized exception to this general rule which gives the person in possession of land, not obtained by force or fraud, the right to protect such possession by injunction from wrongful invasion by another, but no case can be found in which a plaintiff who failed to show ownership, possession, or prior possession of land was held entitled to injunction to restrain a defendant from taking possession and fencing the land. Hill v. Brown (Tex. Com. App.) 237 S. W. 252; Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278; City Nat. Bank v. Folsom (Tex. Civ. App.) 247 S. W. 591; Sanches v. Newman (Tex. Civ. App.) 158 S. W. 797.

As said by our Supreme Court in the case of Lutcher v. Norsworthy, 27 S. W. 630, 631:

"The mere fact that one person is about to trespass upon the land of another does not authorize the issuance of the writ. It is only in exceptional cases that a court of equity will interfere by its process to restrain a trespass. Burnley v. Cook, 13 Tex. 586, [65 Am. Dec. 79]; High, Inj. §§ 713, 669; 4 Wait, Act. & Def. p. 700 et seq. The facts, to call for the interposition of equity to prevent irreparable injury, should be fully and distinctly set forth. This is not done by the petition, nor does the evidence disclose any sufficient facts."

In the case of City Nat. Bank v. Folsom (Tex. Civ. App.) 247 S. W. 591, 593, the circumstances under which an injunction will lie to prevent a trespass upon land, and the limitations upon the use of such remedy by the owner of the land, are thus clearly stated:

"It may be stated as the settled policy of the law of this state that, if one is in possession of certain premises, and thereby capable of using and enjoying them, and another wrongfully attempts to invade this possession or to destroy the use and enjoyment of such premises, he may resort to a court of equity and secure an injunction restraining the wrongdoer, for there is available to him no plain and adequate remedy at law. It is likewise the settled policy of the law of this state that an owner out of possession of premises, even if held by a mere trespasser, cannot resort to a court of equity and by use of its injunctive powers have possession taken from such wrongdoer and transferred to the owner (Hill et ux. v. Brown et al. [Tex. Com. App.] 237 S. W. 252); the courts holding that there is available to the owner a plain, adequate, legal remedy, and as efficient to the ends of justice as the remedy in equity."

The opinion of the majority of the court bases the affirmance of the judgment on the holding that the evidence before the court shows a probable right in appellee and an invasion or threatened invasion of that right by appellant, and was sufficient to authorize a temporary injunction pending a final determination of the rights of the parties.

The sworn petition of appellee does allege facts sufficient to authorize the temporary injunction, and, if the injunction had been granted upon the pleadings with no evidence adduced by either party, the judgment should be sustained. But the plaintiff introduced a number of witnesses on the hearing, and these witnesses disproved the allegations of the petition that plaintiff was in possession of the land, or had ever had it in possession. If constructive possession of land by one holding title thereto is sufficient to authorize an injunction in favor of the owner against any trespasser upon the land, there is no evidence of plaintiff's ownership. Title to land cannot be shown by verbal testimony of ownership. The deeds offered by appellee were not admissible over the objection made by appellant, and, if they be considered as properly in evidence, they show no title in appellee, because no title is shown in the grantees in these deeds. The fact that the appellant offered no evidence, and had stated to some of plaintiff's witnesses that he did not own the land, adds no strength to plaintiff's claim of title.

I cannot bring myself to believe that the evidence authorizes the granting of temporary injunction, and feel constrained to respectfully dissent from the conclusion of the majority of the court.