**HENKE & PILLOT, Inc., et al. v. AMALGAMATED MEAT CUTTERS & BUTCHERS WORKMEN, ETC., NO. 408.**

**No. 10674.**

Court of Civil Appeals of Texas. Galveston.

Oct. 7, 1937.

Rehearing Denied Oct. 28, 1937.

Appellant's and Intervenor-Appellant's Motion for Rehearing Denied Nov. 24, 1937.

W. P. Hamblen and W. P. Hamblen, Jr., both of Houston, for appellant Henke & Pillot, Inc.

Bracewell & Spiner, of Houston, for appellant Henke & Pillot Meat Cutters' Ass'n.

Sewall Myer, of Houston, for appellee.

GRAVES, Justice.

This appeal is from an order entered in open court on June 18 of 1937, by the judge of the Eightieth district court of Harris county, after a full hearing of all evidence, pleadings, and arguments of counsel presented or tendered by all three of the several parties thereto—that is, plaintiff, Henke & Pillot, Inc., the intervener, Henke & Pillot Meat Cutters' Association, a voluntary organization pursuant to written articles for such purpose executed on June 4 of 1937, and the defendant, Meat Cutters' Union, Local No. 408—wherein the appellants here, who respectively were such plaintiff and intervener below, were each refused a temporary injunction they severally sought against the defendant, the appellee in this

court, restraining them from picketing Henke & Pillot's places of business in the city of Houston, distributing handbills, and making verbal representations thereabout, from in any manner interfering with the conduct of that company's business, or from interfering with its employment of the members of intervener association.

In the decree evidentiary of such action, there appears this finding and recitation: "The court, having heard the evidence, pleadings and argument of counsel, finds that there was and is a valid dispute and controversy between the parties and is of the opinion that said applications of plaintiff and intervenor for a temporary injunction should be in all things denied."

Upon the appeal it becomes manifest that the quoted recitation merely meant to reflect a finding that there was then a dispute and controversy only between the Henke-Pillot Company and the appellee, Union, Local No. 408, over the discharge of four of the former's employees who had joined, or at least filed application for membership in, the latter, not that there had been any three-cornered dispute between all the parties hereto; indeed, all the parties to the appeal so treat the matter, none of them contending that the intervener before this trial had been, or then was, in any such dispute either with the Henke-Pillot Company or with the appellee, Union, Local No. 408; wherefore this court, after careful consideration of the record, aided as it has been by the able briefs and arguments of counsel for all three parties, has concluded that, consonant with the principle applied in the somewhat similar case of International Association v. Federated Association, 109 S. W.(2d) 301, decided by this court July 22 of 1937, the learned trial court's order should be affirmed as affects the Henke-Pillot Company, but reversed as concerns the intervener, in the main upon these considerations:

First. Since Henke-Pillot Company grounded its application for the writ upon averments to the effect that it employed a total of 22 meatcutters in its four stores, that there neither was nor had been any such dispute or controversy between it and any of them—rather that its relation with all of them was and had been an amicable one of complete understanding—and since no strike was either in effect or had been declared between it and any of its employees arising out of any such disagreement or controversy between them, it is obvious that the trial court's finding determines the matters of fact so depended upon adversely to it; if, therefore, there was sufficient support in the evidence therefor, it follows that, as to such appellant, the adverse order merely properly preserved the status quo of the controversy between it and the appellee union until the trial thereof on the merits, and this court, after studying the statement of facts, is unable to say there was any lack of such support; in other words, there was testimony that would have justified the court in further specifically finding: (1) That Henke-Pillot Company discharged four of its former employees after learning that they had joined, or at least made application to join, the appellee union, and solely because of that fact, rather than—as it claimed—because their services to it had become unsatisfactory, for which reason it had discharged them before learning of their connection with the appellee; (2) that after such four employees had become so connected with the appellee union and the latter had undertaken to negotiate with the appellant company for an adjustment of claimed differences (inclusive of the privilege of being members of appellee labor union) between them and their former employer, the latter had declined to either so treat or to reinstate such discharged employees; (3) that thereupon the appellee union—after giving it due notice—had, on account thereof both voted a strike against it, and without acts or threats of violence, or otherwise in an unlawful manner, peacefully picketed its premises as a protest against that action, in connection therewith having informed the company that it would call off such strike and picketing immediately, if and when appellant should reinstate such four discharged employees; (4) that Henke & Pillot Company declined such proffer, mainly for the assigned reason that, as the appellee did not have 51 per cent. of its meatcutting employees, the company would refuse to treat with that union at all, whereupon the complained of picketing was instituted.

As the learned trial court will be deemed to have made in substance these just enumerated additional findings, if needful in support of its judgment—the evidence being there from which to have drawn them—it will not only be deemed to have done so, but further, under our

authorities, it would not have abused a sound judicial discretion in refusing the appellant company the coveted writ on account thereof. International Association v. Federated Association, supra, and authorities therein cited; National Labor Relations Board v. Jones & Laughlin Corporation, 301 U.S. 1, 57 S.Ct. 615, 625, 81 L.Ed. 893, 108 A.L.R. 1352.

Second. As concerns appellant Association, however, a materially differing and conclusively established state of facts existed; a large majority of the company's meatcutting employees had independently organized it, after the disaffection of the four of their former number who had so become connected with the appellee, as a voluntary labor organization within the purview of R.S. art. 5152; as such an association, and without any procurement or domination on the company's part, they had made with it by word of mouth a new and mutually satisfactory employment agreement, which they were in the process of harmoniously carrying out, not being parties to nor concerned with the differences between the other parties hereto, when this complained of picketing was visited upon it.

In such circumstances the intervener association was entitled to the protection of a court of equity against such an unwarranted interference with its peaceful contractual relationship with its employer. National Labor Relations Board v. Jones & Laughlin Corporation, 301 U.S. 1, 57 S.Ct. 615, 625, 81 L.Ed. 893, 108 A.L.R. 1352; 25 Tex.Jur. pp. 30-43, inclusive, Title "Interference."

Pursuant to these conclusions, the judgment as to the appellant company will be affirmed, but, as affects the appellant intervener, will be reversed, with instructions to the trial court to so amend the same—in accordance with the intervener's prayer —as will fully protect it against the complained of acts of the appellee in the possession, enjoyment, and execution of its employment agreement with the appellant company.

Affirmed in part and reversed and remanded in part, Chief Justice PLEASANTS concurring in the reversal and remanding, but reserving the right to dissent from the affrmance in part.

On Appellee's Motion for Rehearing.

GRAVES, Justice

Without questioning any of the fact-findings supporting the whole of it, and accepting so much as was an affirmance of its own right to peacefully picket as against Henke & Pillot, Inc., the appellee union's motion for rehearing assails only that part of this court's former judgment directing such modification of the trial court's order as to protect the intervener appellant in its right to carry out its employment contract with the appellant company; in doing so its main contentions are: First, that this court's opinion is in direct conflict with that of the Beaumont Court of Civil Appeals in Thomas et al. v. International Seamen's Union et al., reported in 101 S.W.(2d) 328; second, that no supporting authorities, nor sound reasons, were cited for its holding that the appellee's actions constituted an unlawful interference with the intervener appellant's right to be protected in the pursuit of its contract of employment with the appellant company.

It is this court's conclusion that no conflict with the Thomas Case, supra, exists; in the first place, there was a two-sided controversy between rebellious members thereof and their union over whether or not such members could use the union's name in pursuing a strike they were conducting as individuals only against their employers, with which the union itself had refused to have anything to do, and did not involve at all a tripartite contest—which this one is—where two separate unions are involved with no bona fide dispute whatever existing between them.

In the second place, that appeal was from a final judgment of the trial court upon a full hearing of all the facts, and not one from a hearing upon a temporary injunction only, as was that in this instance; a decidedly different rule of law is applicable here, since the sole issue upon this appeal was whether or not the trial court had in any respect violated a sound judicial discretion. Harding v. Pearson & Co. (Tex.Com.App.) 48 S.W.(2d) 964; Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.(2d) 722; Nagy v. Bennett (Tex.Civ.App.) 24 S.W.(2d) 778; Midland Building Ass'n v. Sparks, etc., Church (Tex.Civ.App.) 35 S.W.(2d) 774; 3 Texas Jurisprudence 1077; 24 Texas Jurisprudence 313, 314, § 253; Scanlan v. Houston Lighting Co. (Tex.Civ.App.) 62 S.W.(2d) 537.

In the third place, the appellee is further inept in its appraisal of the opinion in the Thomas Case, which in ultimate effect was merely to modify and then affirm the judg-

ment of permanent injunction granted by the court below; in other words, after holding the order before it to have been a final instead of an interlocutory one, it disposed of the varying contentions between two groups of such rebellious members of the appellee union there by first restraining them from conducting the strike they were so engaged in by picketing or otherwise at all in the name of that union, and next by enjoining the Port Arthur city-officials from intentionally obstructing or interfering with the appellant strikers in conducting their strike individually, as to which the court specifically limited their privileges to such as R.S. art. 5153 was held to have expressly conferred upon them.

This court is in entire harmony with those holdings as so made by the very able Beaumont Court of Civil Appeals, finding nothing therein contravening any of its own holdings in the case now before it. As stated, that court did not have before it two separate labor unions, the one organized and claiming its privileges to work under pre-existing contract with its employer, pursuant to R.S. art. 5152, the other—with no existing differences between the two unions whatever—insisting that, pursuant to the rights vouchsafed it under the succeeding article 5153, by virtue of a labor dispute existing between it and their employer over the discharge of four of its members, it could so conduct a strike in behalf of such discharged employees against the employer as would materially, if not altogether, prevent the carrying out by the other union of its own individual contract of employment with that employer. The opinion in the Thomas Case promulgates no such doctrine upon which it can lean for such support, nor do any of the other authorities cited and depended upon along with it.

This appellee has been accorded all the rights expressly guaranteed by the article it so invokes against the only party it was in any dispute with; it has never declared any strike against, nor even claimed any legal grievance with, the appellant intervener, but in this appeal nevertheless asserts its right to prevent the latter's members from going back to work under an entirely independent new contract they have made with their former employer, insisting upon the original hearing here that no such contract existed between those parties; when, however, this court's former opinion pointed out the existence of such evidence

and that it was undisputed, albeit the contract was a verbal one, on rehearing it insisted that its verbal character rendered the new employment of no effect against its own right to so pursue its strike; obviously, the verbal character of this new contractual arrangement in no manner rendered it invalid between the parties thereto, or in any way ineffective as against such a third party, as the appellee was indisputably shown to have been.

■ Clearly it was not the policy of the Legislature in permitting labor aggregations to form unions, and conferring upon them the positive right of peaceful persuasion, as was done in R.S. arts. 5152 and 5153, to in any manner prefer one above another, or to discriminate in any way between different groups properly availing themselves of the privileges so accorded; rather, in the absence of indicia of any such purpose, it is—under primary rules of construction—to be presumed that the public purpose was to treat all alike, according to each its meed of privilege under the particular act it accepted; that being true, this court has been unable to perceive any reason for not holding these two litigating unions here to each be entitled to such rights only as those statutes gave it; wherefore, it has been unable to see any legal basis upon which this appellee could in the circumstances here existing—while positively proclaiming that its sole complaint was against the Henke-Pillot Company for discriminating against it by discharging four former employees for joining it—at the same time also contend that the mere existence of that unilateral grievance gave it the further right to prevent the appellant intervener from itself making an entirely disassociated contract of employment with Henke-Pillot Company and putting its votaries to work thereunder; therefore, it cannot so hold; indeed, it seems to this court that the right to thus organize and to contract for employment upon the appellant intervener's part was what Chief Justice Hughes, in National Labor Relations Board v. Jones & Laughlin S. Corporation, 301 U.S. 1, 57 S.Ct. 615, at page 622, col. 2, 81 L.Ed. 893, 108 A.L. R. 1352, termed a fundamental right; of course, that decision had to do with the new Federal Wagner Connery Labor Relations Act (29 U.S.C.A. §§ 151–166), but there are rights of employees that transcend mere statutes—whether federal or state and of such the great Chief Justice

was speaking when, in reference to the United States statute referred to, he said:

"Thus, in its present application, the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer.

"That is a fundamental right. Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers and agents. Discrimination and coercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority;" Bouv. Law Dict. Unabridged, Topic Strike, pages 3159, 3160; O'Neil v. Behanna, 182 Pa. 236, 37 A. 843, 38 L.R.A. 382, 61 Am. St.Rep. 702; Tunstall v. Stearns Coal Co., 192 F. 808, 113 C.C.A. 132, 41 L.R.A.(N.S.) 453.

Wherefore, the appellee's motion for a rehearing will be refused, and, as in effect was before done, the trial court's order refusing appellant Henke-Pillot Company's application for injunctive relief, thereby permitting the peaceful picketing of its premises by the appellee in furtherance of the strike it had so declared in behalf of the four discharged former employes of that company and on account of their discharge, pending a final trial of the whole controversy upon the merits, will be affirmed. In other words, appellee shall not be interfered with in its peaceful picketing of the Henke-Pillot Company's premises in furtherance of its strike. But the portion of such order likewise denying appellant intervenor's prayer for a like relief will be reversed, with instructions to that court, upon the filing by appellant intervener with it of a satisfactory bond in favor of the appellee in the sum of $500, to issue its writ of temporary injunction against such appellee, effective pending such final trial of this cause, restraining it from either pursuing such strike or applying such picketing as against the appellant intervener, or from otherwise by conduct, or representations, written or oral, interfering with the appellant intervener in the possession, enjoyment, or carrying out of its own employment contract with the appellant company; further, prohibiting it from attempt-

ing by such picketing, or any other means, from undertaking to intimidate or coerce the members of such intervener association into either breaking their contract with the Henke-Pillot Company or joining the appellee's organization, or from attempting to bargain for or represent such appellant intervener in any manner with its employer, the Henke-Pillot Company, or from in any manner soliciting, asking, or encouraging such employer to discharge the appellant intervener's members and place others in their stead.

It is so ordered.

Motion refused, the full court concurring.