McMICHAEL *et al. v.* ATLANTA ENVELOPE CO. *et al.*
McMICHAEL *et al. v.* WEBB & VARY Inc.

1 Where employers, whose businesses require the employment of a number of workmen skilled in a particular trade, determine to operate their businesses on non-union bases and to that end adopt a policy not to employ members of the union, and do employ non-union workmen under a contract, terminable at will, providing that such employment shall immediately cease if said employees become members of the union, equity will protect by injunction such contractual status as against strangers and striking former employees, who, knowing such status, conspire to coerce the employers to abandon the policy of employing only non-union labor and to cause a breach of the aforesaid contractual relation, and who endeavor by threats, intimidation, and improper persuasion to deprive such non-union employees of the exercise of their own freedom of will, and thus induce them to violate their contracts of employment by joining the union, and thus force the unionizing of the plants or render it impossible to continue the operation of the business.

2. Under the pleadings and the evidence the court did not abuse its discretion in granting the interlocutory injunction.

(*a*) The interlocutory injunction, properly construed in connection with the evidence, enjoins only those acts which we have held in the opinion to be unlawful.

3. Exceptions to the admission of evidence, to avail the plaintiff in error here, should show the objections made to the admission of the evidence or the grounds upon which a motion to rule out the same, if admitted, was based, and should also set forth in connection with the exception itself the evidence alleged to have been illegally admitted, so that this court would not be compelled to examine the brief of evidence in order to ascertain the evidence alleged to have been illegally admitted.

Nos. 2372, 2373. AUGUST 10, 1921.

Injunctions. Before Judge Pendleton. Fulton superior court. November 27, 1920.

*J. A. Miller* and *Bond Almand,* for plaintiffs in error.

*Winfield Payne Jones, William J. Davis Jr.,* and *Walter S. Dillon,* contra.

GILBERT, J. These two cases were heard together in the trial court, upon the same evidence. One judgment was passed, applicable to both cases. Two bills of exception were sued out, and they were argued as one in this court. The bills of exception and the records in the two cases in this court are identical, with the exception of the difference in names. As the same judgment must necessarily be rendered in both cases in this court, they will be decided as one case.

The petitions filed by the plaintiffs in the court below, Atlanta Envelope Company et al. and Webb & Vary Inc., against McMi-

chael et al., prayed that the defendants, individually and as agents and representatives of Atlanta Printing Pressmen and Assistants Union Number Eight, be enjoined from interfering with or attempting to interfere with the plaintiffs' employees, present or prospective, for the purpose of inducing those employees to join said union or to leave the employment of plaintiffs without the consent of the latter, by representing to such employees that they would suffer loss or be otherwise injured by remaining in petitioners' employment, and from interfering with or attempting to interfere with the pressmen and feeders employed by the plaintiffs for the purpose of unionizing, without the consent of plaintiffs, the employees in that branch of their plants, and from seeking to bring about, in aid of such purpose, the breach by present or future employees of the plaintiffs of contracts of employment made between the plaintiffs and their employees, the terms of which contracts were known to defendants; and from inducing or seeking to induce any of plaintiffs' employees to leave their employment, by intimidation, misrepresentation, abusive language, promises of better conditions and shorter hours and better pay, or persuasion; and for general relief and process.

It was alleged that the defendants, acting as representatives of said Union, made a demand upon the plaintiffs that they contract with all of the pressmen and feedmen employed by them at that time, to give to such employees a large increase in wages, to make a substantial reduction in their working hours, and also to "close" their shops, that is, that the plaintiffs should agree to employ as pressmen and feedmen only persons who were members of said Union; that upon the refusal of the plaintiffs to yield to these demands all of the pressmen and feedmen then employed by plaintiffs walked out, rendering it necessary for plaintiffs to secure nonunion pressmen and feedmen or to yield to the demands of the defendants and thus be forced into bankruptcy; that they thereupon determined to run non-union shops so far as their pressmen and feedmen were concerned; that petitioners had at great expense made contracts of employment with certain persons, and expected to be able to contract with others, upon the distinct understanding that such new employees could not work for and be in the employment of plaintiffs and be a member of said union, and that if any one of such new employees should become a member of said union

at any time while in the employment of plaintiffs, such employment should immediately cease; that defendants had approached the non-union men employed by petitioners and had sought by threats, menaces, intimidation, coercion, and persuasion to induce them to breach their contracts of employment with petitioners and to leave their employment, and that defendants had openly threatened that they would cause the persons already so employed to leave their employment and would prevent petitioners from contracting with other non-union employees, or that in cases where contracts of employment were made on the terms above stated they would cause such new employees to become members of the union and leave the service of petitioners, or would prevent them from working for petitioners by making conditions so onerous and unpleasant that petitioners could not run their presses on a non-union basis; that because of the activities of defendants they were daily losing large sums of money on account of their inability to procure sufficient help to enable them to fill outstanding contracts for printing; and that unless the defendants are restrained by injunction from committing the acts complained of, petitioners will have to yield to the demands of the union or go out of business, either of which courses will result in irreparable loss and damage to them. The court, after hearing the evidence, granted the following interlocutory injunction: " It is considered, ordered, and adjudged, that the defendants, O. L. McMichael, J. A. Alleyn, R. L. Brown, and J. R. Penny [in the judgment in the Webb & Vary case the name Will Walton appears as one of the persons enjoined, and the name J. R. Penny does not], and their agents and confederates are enjoined from interfering with or attempting to interfere with the plaintiff's employees for the purpose of inducing the plaintiff's employees to join said labor union without the consent of the plaintiff, by representing that they would suffer no loss by leaving the plaintiff's employment and joining the said union, or because the plaintiff was running a non-union plant in so far as their pressmen and feeders are concerned. And said defendants, their agents, and confederates are further enjoined from interfering with or attempting to interfere with the plaintiff's employees for the purpose of unionizing the plant of plaintiff in so far as their pressmen and feeders are concerned without the plaintiff's consent, and in aid of such purpose knowingly and wilfully bringing about

a breaking by plaintiff's employees of contracts of service known at the time to exist with plaintiff's present or future employees. And the said defendants, their agents, and confederates are further enjoined from inducing or seeking to induce the employees of plaintiff, present or future, to leave the service of the plaintiff, by intimidation, misrepresentation, abusive language, promises of better conditions and shorter hours and better pay, or persuasion."

The question to be determined by this court is whether or not, under the pleadings and the evidence, there was an abuse of discretion by the trial judge. It is well settled and recognized that this court cannot undertake to decide questions of fact on conflicting evidence. We can only say whether there was evidence sufficient to authorize the finding of the trial court. Plaintiffs in error contend that the judgment was unauthorized by the evidence, because their acts, as shown by the evidence, were strictly within their lawful rights. Their brief contains the following statement: "This case involves the question of just what can striking employees do to win a trade dispute; and second, just how far the employer can go towards fighting the demands of his employees without injuring the property rights of the employees or the rights of the public. It is a case of employee organization against employer organization. The rights and relations are so intermingled that the one can hardly act without trespassing upon the other." In reference to what took place after the strike or walkout the brief for the plaintiffs in error says: "The usual course of operations took place by the union employees doing all within their lawful power to keep others from taking their places and the employers getting in new employees in order to win the fight. On October 12, 1920, the employers started injunction proceedings against the union employees, and alleged, among other things, that since the walkout the various employers had adopted a policy in their shops to employ only pressmen and feeders who did not belong to any union and agreed not to join the union, and if they did so they would be discharged; that after employing a number of new men under such contract the various union employees were inducing and attempting to induce these new employees to break their contracts by joining a union, alleging therein that these union employees were using both unlawful and persuasive means."

1. We think there are no new principles involved in the present

issues. The judgment in these cases, with the exception of the names, is identical with the judgment which was affirmed in the case of *Callan* v. *Exposition Cotton Mills*, 149 *Ga.* 119 (99 S. E. 300). The facts in that case were very similar to the facts in these cases. Callan was an agent or officer of the union undertaking to unionize the cotton-mill, and was denominated a stranger, since he had not been an employee of the Exposition Cotton Mills. In these cases striking former employees, assisted by one or more officers of the union, were sought to be enjoined. The principles of law involved, however, are the same, since former employees engaged in what they denominate as an industrial warfare with their former employers would no more be authorized to unlawfully interfere with the business of the latter than would a stranger. In Iron Molders' Union v. Allis-Chalmers Co., 166 Fed. at page 52 (91 C. C. A. 638, 20 L. R. A. (N. S.) 315), in a concurring opinion, Grosscup, Circuit Judge, said: "Manifestly, then, pending a strike or a lockout, and as to those who have not finally and in good faith abandoned it, a relationship exists between employer and employee that is neither that of the general relation of employer and employee, nor again that of employer looking among strangers for employees, or employees seeking from strangers employment." On the other hand in Barnes v. Typographical Union, 232 Ill. at page 431 (83 N. E. 943, 14 L. R. A. (N. S.) 1018, 13 Ann. Cas. 54), Mr. Justice Cartwright said: "It is true that competition in business justifies action for the benefit of one of the competing parties which results in injury to the other, and a reason frequently given is that the general public benefits outweigh occasional individual losses. One who is seeking employment for himself may offer to work on any terms that he may choose, and the exercise of his legal right may result in the discharge of another laborer. But that rule does not apply to this case. It is not very clear what is meant by competition for the purpose of promoting the welfare of the union and its members, but it is clear that the union and its members were not in competition with the complainants in respect to labor or anything else. The members of the union had left the service of the complainants, and their only purpose was to prevent the complainants from carrying on their business. They were endeavoring to compel the complainants to submit to their dictation, by depriving the complainants

of their legal right to employ such laborers as they might choose. If there is a combination to injure a person because he refuses to comply with some demand where he has a legal right to refuse, there is no way of classifying acts in furtherance of such purpose as competition. The acts alleged in the bill were directed primarily against the complainants for the purpose of doing them harm, and that sort of action is not lawful competition." It is not necessary for us to decide in this case whether a strike entirely severs all relations between the parties. The question to be determined is whether the plaintiffs in error in this case exceeded their lawful rights. Plaintiffs in error rely upon the case of *Jones* v. *Van Winkle Gin & Machine Works*, 131 *Ga.* 336 (62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. R. 235), where this court held that " Equity will not enjoin employees who have quit the service of their employer from attempting by proper argument to persuade others from taking their places; so long as they do not resort to force or intimidation, or obstruct the public thoroughfares." We find no fault with that decision, and think that it is sound in principle; and, if striking employees do no more than to attempt, by " proper argument," to persuade others from taking their places, and do not resort to force and intimidation, that a court of equity would not be authorized to interfere. We are equally sure that where such former employees attempt by improper argument to dissuade others from taking their places, and do resort to force, coercion, or intimidation, it would equally be the duty of a court of equity, in a proper case, to interfere by injunction. " It must be conceded that argument and persuasion are lawful if not directed to the accomplishment of an illegal and unlawful purpose. . . An act which is naturally innocent, when done with actual malice for the purpose of injuring another, and followed by such injury, is not excused because the act might be innocent under other conditions." Barnes *v.* Typographical Union, supra, at p. 436. The persuasion that the law permits in these circumstances is such as appeals to the judgment, reason, or sentiment, and leaves the mind free to act of its own volition. Where there is no such freedom of action, more than mere persuasion has been exercised, and it amounts to duress, intimidation, coercion, or other like influence. Indeed, the case of *Jones* v. *Van Winkle,* supra, also laid down the fol-

lowing rule: " An injunction may issue, in a proper case, to restrain persons from attempting, by threats, violence or intimidation, or other unlawful means, to prevent any person from engaging in, remaining in, or performing the business, labor, or duties of any lawful enterprise or occupation, although the acts sought to be restrained, if committed, constitute a crime." That case also cites the following sections of the Penal Code: " § 126. If any person or persons, by threats, violence, intimidation, or other unlawful means, shall prevent or attempt to prevent any person or persons in this State from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, such offender or offenders shall be guilty of a misdemeanor. § 127. If any person or persons, singly or together, or in combination, shall conspire to prevent any person or persons, by threats, violence, or intimidation, from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, such offender or offenders shall be guilty of a misdemeanor. § 128. If any person or persons, singly or by conspiring together, shall hinder any person or persons who desire to labor from so doing, or hinder any person, by threats, violence, or intimidation, from being employed as laborer or employee, such offender shall be guilty of a misdemeanor. § 129. If any person or persons, by threats, violence, intimidation, or other unlawful means, shall hinder the owner, manager, or proprietor for the time being from controlling, using, operating, or working any property in any lawful occupation, or shall by such means hinder such person from hiring or employing laborers or employees, such offender or offenders shall be guilty of a misdemeanor." The trial court was authorized to find that the defendants, acting together under a common understanding, which made each of them responsible for the acts of all of their fellows, were guilty of intimidation, threats, and coercion, thus authorizing the grant of the interlocutory injunction. There can be no question that under former decisions of this court, which are controlling in this case, the court was authorized to enjoin the defendants from endeavoring, by the means stated above, to induce the employees to violate their contracts of employment by joining a labor union in such large numbers as would force the employer to consent to the unionizing of their plants or would

render it impossible to continue the operation of their businesses. *Callan* v. *Exposition Cotton Mills,* supra. And this rule is supported by the decision in Hitchman Coal Co. *v.* Mitchell, 245 U. S. 229 (38 Sup. Ct. 65, 62 L. ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461). The case of Tunstall *v.* Stearns Coal Co., 192 Fed. 808 (113 C. C. A. 132, 41 L. R. A. (N. S.) 453), involved some of the features of the present case. It appeared that some of those sought to be restrained were paying sums of money to workmen as inducement for them to quit their work. It was conceded by counsel representing the strikers that such acts were for the purpose of compelling the company to yield its position or close its mine. After elaborate discussion and citation of authorities the court, in that case, decided that there was "no logical theory" by which the conduct described could be considered "lawful persuasion." It was further said: "In every case where this right of persuasion is sustained, it is because, in the end, the employee exercises his own free will. If he is persuaded that it is for his best interests to work elsewhere or not to work, he has a right to follow out his conclusion; but if his conclusion is not reached as the result of his free choice, but that choice is controlled either by a threat or by the promise of an outside, foreign, independent reward, there is a lack of that foundation upon which the theory of 'lawful persuasion' must stand." The distinction between the use of proper argument to dissuade others from taking the places of striking former employees where no contract exists and where a contractual relation did exist was made clear by this court in *Burgess* v. *G., F. & A. R. Co.,* 148 *Ga.* 415 (96 S. E. 864). What would constitute improper argument to persuade employees to leave their employment obviously must depend upon the facts of each individual case, and no court could possibly lay down a general rule in advance that would be satisfactory in all cases. Any statement of general rules would be binding only in so far as pertinent to the issues made. Any further expression would be obiter dicta. It is proper to say that the right of laboring people to organize and to strike for the purpose of protecting and promoting their common welfare by fair and lawful means is fully recognized by this court, and that right is not challenged anywhere in this case. It is universally recognized, by the courts at least, that labor has as much right as

capital to organize for their own protection. It is essential, however, for the protection of the public that neither should be permitted to exceed their lawful rights, nor to exercise other than fair, lawful, and peaceable means. The principle is well and fairly stated in Iron Molders' Union *v.* Allis-Chalmers Co., supra, a case cited by plaintiffs in error: "To whatever extent employers may lawfully combine and co-operate to control the supply and the conditions of work to be done, to the same extent should be recognized the right of workmen to combine and co-operate to control the supply and the conditions of the labor that is necessary to the doing of the work. In the fullest recognition of the equality and mutuality of their rights and their restrictions lies the peace of capital and labor." In the case of Kemp *v.* Division No. 241, 255 Ill. at p. 237 (99 N. E. 398, Ann Cas. 1913D, 347), it was well said: "Every person has the right, under the law, to dispose of his own labor or manage his capital according to his own will, but he must exercise this right so as to make it compatible with the exercise of similar rights by others. (Erle on Trade Unions, 12.) The legal right of every person is conditioned on the welfare of society, and the later is more important than the welfare of any individual or class."

2. The evidence in regard to interference with some of the establishments fully authorized a finding by the court that the defendants were guilty of threats, intimidation, and coercion, and that they offered outside and independent reward to induce the new employees to break their contracts and to leave Atlanta. There was evidence tending to show that union men had been "planted" in some of the printing shops to gather information; that union men congregated in large numbers around some of the shops at such hours as the employees went to and returned from their work. There was evidence tending to show that defendants informed employers that they would send away employees as fast as they were employed. There was evidence that one employee was forcibly taken hold of by union men who insisted upon arguing with him and a companion about leaving their employment. These employees insisted that they be left alone, and undertook to leave the strikers, who informed them that they "would not be on the job in the morning, and that they had better listen to them, and if they wanted to get rough about

it, that they [the strikers] would kick hell out of them." Another employee swore that he was told by strikers that they would "get him." Some were annoyed by strikers until police protection was sought. The evidence showed that the new employees were accepted by the printing establishments under a form of contract adopted by all of the plaintiffs, which said contract provided that the employees should not be members of the union, and, should they become such, the contract would be terminated. One non-union employee was told by the strikers that he was not going to stay here three months. This employee stated to the strikers that he was under contract for three months and was going to stay here and fill it out. He was offered his transportation to leave. S. R. Marks, a vice-president of the Pressmen's Union (but not a former employee of the plaintiffs) testified for the defendant strikers, in substance, that he had assisted some of the non-union men under employment by the employing printers with transportation to leave town; that he did not know whether some of the men assisted were working under contract not to join the union, and that he was not concerned about that; that none of them said when they came to see him that they were under contract not to join the union. He testified that he had money in his hands and was paying the same to men who had been working for the employing printers, to leave. He further testified that he intended to win the fight on money he was getting from all sources; that the employers were running non-union shops; that he considered the strike fight legitimate, legal, honest, and straightforward. In other instances arguments and appeals were made to new employees not to retain the places of former employees and thus deprive the latter of the means of supporting themselves and families. In each instance the object sought by the defendants undeniably was to bring about a severance of the relation of employer and employee between the printing establishments and their new employees. Whether the object was stated in plain terms or not, if successful the effect was to cause a breach of the contract. Whether the evidence in regard to interference with some of the printing shops and as to some of the defendants, considered alone as if in a separate case, would not authorize the grant of an interlocutory injunction, the judgment will not be reversed where the evidence authorized the judgment in

behalf of some of the plaintiffs against some of the defendants. The exception is to the judgment, as a whole. The plaintiffs brought the actions together against the defendants, the Pressmens' Union acting through their members and officials, charging that the latter were conspiring and acting together against the plaintiffs as a whole.

3. The third headnote does not require elaboration.

*Judgment affirmed. All the Justices concur.*