## 44800. DAWSON v. WADE.
(361 SE2d 181)

WELTNER, Justice.

Wade and Dawson own parcels of real property that are divided by Reedy Creek, Wade's property being to the west and Dawson's to the east of the creek. The creek is fed principally by artesian springs located on Wade's property. There are four beaver dams along the segment of the creek that divides the two properties. The dams, in everchanging form, have been in the creek for some twenty years, and have the effect of causing swampy conditions on either side of the creek. It is Dawson's desire to destroy the dams. Wade, *contra,* finds them useful for irrigation. Both parties use water from the creek to irrigate crops.

Dawson dug a canal on his property six feet deep and twenty-five feet wide, and roughly parallel to the creek. During the digging of the canal, the eastern bank of the creek was breached, with the result that the waters of the creek were diverted into the canal, drying up a segment of the creek. At the same time, the beaver dams were damaged. Wade sought injunctive relief. After hearing, Dawson temporarily was "restrained and enjoined from continuing to dig the channel or in anywise further diverting the waters of" the creek, and was "enjoined from changing the status quo of the diversion of the waters of" the creek and "from further obstructing and diverting the said water course."

Following a trial, Dawson further was enjoined from digging of the canal, and he was ordered to "fill up his canal entirely and without reservation." The final judgment and decree also provided that prior to filling the canal Dawson "shall make a seal of wood, concrete, or other material, at the point where the canal penetrates the east edge of Reedy Creek so that the canal is sealed off and waters of Reedy Creek do not enter the canal." While the trial court did not

order specifically either party to take (or to refrain from taking) any act concerning the beaver dams, it entered the following conclusions of law:

(a) "Beaver dams Nos. 1, 2, 3 and 4 have been in existence for more than twenty (20) years and therefore incorporeal rights have been acquired. Both parties have lost their right to the natural flow of Reedy Creek uninterrupted by the beaver dams because of their existence for so long a time. The temporary breaks in these dams by Dawson were so promptly repaired they did not break the continuity of their existence so to prevent prescriptive rights."

(b) "Wade has an easement to flood the lands of Dawson caused by the backing of the waters of Reedy Creek by beaver dams 1, 2, 3, and 4 and Dawson likewise has an easement to flood the lands of Wade caused by the backing up of waters from dams Nos. 1, 2, 3 and 4."

(c) "Thus, the parties no longer have the right to pass the waters of Reedy Creek unobstructed by these beaver dams. Both have the right to maintain the accumulated water behind these dams on each other's lands, because they are no longer under a duty to return the natural flow of the stream unimpeded by these dams. To hold otherwise, would allow Wade or Dawson to drain the back waters from these dams, which, at least Wade, has used and relied upon."

1. OCGA § 44-8-2 provides: "The beds of nonnavigable streams belong to the owner of the adjacent land. If the stream is a dividing line between two parcels of land, each owner's boundary shall extend to the thread or the center of the main current of the water. If the current changes gradually, the boundary line follows the current. If from any cause the stream takes a new channel, the original line, if identifiable, remains the boundary. Gradual accretions of land on either side accrue to the owner of that side."

2. OCGA § 51-9-7 provides: "The owner of land through which nonnavigable watercourses flow is entitled to have the water in such streams come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors. The diverting of the stream in whole or in part from its natural and usual flow, or the obstructing thereof so as to impede its course or cause it to overflow or injure the land through which it or any right appurtenant thereof, or the polluting thereof so as to lessen its value to the owner of such land shall constitute a trespass upon the property." While the code section clearly applies to upper and lower riparian owners, we view its provisions to extend also to owners of parcels on either side of the stream.

3. (a) We must disagree with the trial court concerning the status of the beaver dams in the applicable segment of Reedy Creek. The dams are not the handiwork of Wade, and he can enjoy no prescrip-

tive right to their continued existence. OCGA § 44-5-161 and 175. The case of *Brown v. Tomlinson*, 246 Ga. 513 (272 SE2d 258) (1980), is inapplicable to the circumstances of this case. There, the dam was erected through human agency and with common consent of riparian owners, including the complainant's predecessor in title.

(b) In so holding, it must be made plain that Dawson will not be permitted to trespass upon Wade's property in order to remove the dams, should he choose so to do.

4. Having thus disposed of the question of the beaver dams, we now consider whether requiring Dawson to fill completely the canal (the same being entirely on Dawson's property), is necessary in order to restore and maintain the flow of the creek as it existed before it was diverted by Dawson. After conducting a personal inspection of the lands of both parties, the creek, and the canal, the trial court concluded that such relief was necessary in order to afford to Wade complete relief. Even so, it is unclear to us whether so far-reaching direction was founded upon the ruling that the beaver dams must remain undisturbed. In view of our contrary holding, this case is remanded with the request that the trial court re-examine this aspect of its order (i.e., the complete filling up of the canal) to determine whether that is necessary to restore and maintain the creek banks breached by Dawson. "[T]he injunction should always be so worded as not to impose on defendant any greater restriction [burden] than is necessary to protect plaintiff from the injury of which he complains." H. McClintock, *Principles of Equity*, p. 392 (2d ed. 1948).

5. We find no error in the remaining enumerations.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Gregory and Bell, JJ., who dissent.*

GREGORY, Justice, dissenting.

I would affirm the trial court.

I agree with the majority and the trial court that one riparian owner may not divert the flow of a stream to the detriment of another riparian owner beyond making a reasonable use of the water. As I understand the facts found below, the only way to restore the status quo is to require that the canal be filled completely. Otherwise big holes will exist likely to affect the run of Reedy Creek beyond a reasonable use of water. Thus the injunction was carefully drawn to eliminate the damage done and this court should allow the injunction to stand. There is no basis for a remand. The matter has already been carefully examined and decided below.

I must also disagree with the conclusion of the majority that because the beaver dams were not the handiwork of Wade he enjoys no prescriptive right in the continued existence of the pond so as to prevent the alteration of the dams by Lawson to cause the water to

drain. The trial court found the dams existed for more than 20 years. Under these facts I would apply the rationale of *Brown v. Tomlinson*, 246 Ga. 513 (272 SE2d 258) (1980). There a group of riparian owners shared the cost of constructing a dam across a stream so as to create a pond for recreation purposes. The water backed over the separate tracts of land of different owners including Brown. Some years later when others sought to drain the water by cutting the dam Brown filed suit for injunctive relief. This court reasoned that Brown had the right to maintain the accumulated water on his land because of the continued existence of the body of water for more than 20 years. Mutual prescriptive easements in lands of the various riparian owners, including Brown, were recognized. (Brown lost his case not because he had no rights but because he was guilty of laches in failing to timely pursue them.) It is true the dam in Brown's case was constructed by human effort but I do not believe that should alter the rights of the parties in this case. Here the dams were a natural occurrence allowed by the parties to continue for over 20 years. The beavers were the agency. I would analogize this to a mountain stream being dammed by a landslide to form a lake. I suggest after sufficient time passes the riparian owners have a right in the continuing existence of the lake sufficient to prevent anyone from destroying it by removing the dam.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED OCTOBER 22, 1987 —
RECONSIDERATION DENIED NOVEMBER 4, 1987.

*Mills & Chasteen, Ben B. Mills, Jr.,* for appellant.
*Smith & Harrington, Will Ed Smith,* for appellee.