46183. THOMASON v. KERN & COMPANY, INC.
(376 SE2d 872)

GREGORY, Justice.

Appellant Thomason filed a complaint in Fulton Superior Court on three counts: count one, for an injunction; count two, for damages; and count three, for attorney fees and expenses.

Thomason alleged that he had acquired a prescriptive easement through Kern's land and he sought to enjoin Kern from blocking a driveway on the corporation's land. Thomason had used the driveway since he purchased his house in 1962. Kern purchased the adjoining land in 1986. In August 1986, Thomason learned that Kern intended

---

to move the driveway in order to prepare the land for commercial development. On September 5, 1986, Thomason gave Kern written notice of his right to a prescriptive easement.

Kern negotiated with Thomason in an effort to grant him an express easement over a new driveway in exchange for the old driveway, but the parties were unable to agree. On April 24, 1987, Thomason filed this action. In its answer, Kern pleaded the defense of laches.

Both parties moved for summary judgment. The trial court granted summary judgment for Kern and denied Thomason's summary judgment motion. The trial court held that Thomason had acquired a prescriptive easement but that Kern could alter the path of the easement as long as Thomason was not inconvenienced. Although the trial court did not reach the laches issue, the court found that Kern had spent more than one million dollars in preparing its property for development. The court also found that Thomason learned of the impending road relocation at least nine months before he filed suit and that he let Kern spend substantial amounts of money before asserting his legal rights.[1]

We agree that Thomason had acquired a prescriptive easement over Kern's land, but we also hold that Kern could not alter the path of the easement. One who would acquire a prescriptive easement must not have shifted the path from place to place during the establishment period. *Raines v. Petty*, 170 Ga. 53, 57 (152 SE 44) (1929). It follows that once the easement has been acquired, the owner of the servient tenement may not alter the path of the easement.

Kern argues that the new driveway improved Thomason's rights. But even if Kern had offered Thomason a gold-plated driveway, Kern could not force Thomason to accept a different easement merely because the corporation wanted to develop its land. Therefore, we reverse the trial court's granting of summary judgment for Kern. Because laches is ordinarily a question of fact properly submitted to a factfinder, we remand this case to determine whether Thomason's request for an injunction is barred. *Bacon v. Edwards*, 234 Ga. 100, 103 (214 SE2d 539) (1975).

Because Kern could not alter the path of Thomason's easement, Thomason's claims for damages and fees also survive summary judgment.

*Judgment reversed and remanded. All the Justices concur, ex-*

---

[1] We note that an injunction will be denied a party who with full knowledge of his rights has been guilty of delay in asserting them and has allowed large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction. *Bacon v. Edwards*, 234 Ga. 100, 102 (214 SE2d 539) (1975). Furthermore, a mere objection or protest, or a mere threat to take legal action, is not sufficient to exclude the consequences of laches. Id. at 103.

*cept Smith, J., who concurs in part and dissents in part. Weltner, J.,
disqualified.*

SMITH, Justice, concurring in part and dissenting in part.

I agree with the majority's holding that this case should be re-
versed; however, I do not agree that it should be remanded to decide
the question of laches. First, laches is not applicable. Second, the trial
court judge had the defense of laches before him and he chose not to
rule on it.

In Kern's invitation to this Court to apply laches, Kern stated:

> In *Bacon [v. Edwards*, 234 Ga. 100 (214 SE2d 539)
> (1975)]. . . .The Supreme Court of Georgia *reversed* a jury
> verdict for the neighbors because: "(t)he evidence show(ed)
> laches as a *matter of law*. . ." [Emphasis supplied.]

Kern's brief at pp. 5-6.

This Court *affirmed* the jury's verdict because it could *not* find
laches as a matter of law.[2] The defendants in *Bacon*, supra, con-
structed a building on their property that was in violation of restric-
tive covenants. The neighbors objected and sought to permanently
enjoin the defendants from allowing the building to remain on their
property. The injunction was granted despite the fact that the con-
struction was begun in the fall of 1973, the suit was not filed until
May 1974, the construction was ninety percent completed, and the
defendant had expended over $2,000, plus many hours of labor on the
construction. In *Bacon*, supra, the building was constructed with
knowledge of the restrictive covenant, just as in this case the private
way was obstructed with knowledge of the private way.

Kern also stated in its brief:

> The Georgia Supreme Court also reversed an injunction [in
> *Black v. Barnes*, 215 Ga. 827 (114 SE2d 38) (1960)] finding
> laches as a matter of law, where the plaintiff brought suit
> three months after becoming aware of the construction which
> *threatened his private way*. . . . [Emphasis supplied.]

Kern's brief at p. 6.

The plaintiff in *Black*, supra, sought to enjoin construction of an
apartment project on the basis of alleged zoning violations. The only
mention of the plaintiff's relationship to the land in the opinion was:
"It appears from the record that the plaintiff lived near the site." Id.

---

[2] "[T]his court has repeatedly stated that laches is ordinarily a question of fact properly
submitted to a jury. [Cits.]" *Bacon*, supra, 234 Ga. at 103.

at 829. *The case did not involve a private way.* There is not a case in which laches has been used as a bar to a holder of a private way who was negotiating with the person who threatened to, and who ultimately, illegally obstructed the private way.

A private way is a special interest in property:

> [i]t is well settled that neither laches nor the statute of limitations will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish his rights.

*Richards v. Richards,* 209 Ga. 839 (76 SE2d 492) (1953).

Mr. Thomason was in peaceable possession of a private way in which he had a vested right prior to the time Kern bought the property with knowledge of Mr. Thomason's private way. Mr. Thomason's only means of ingress and egress was the private way across the land of another that he had used since 1962 when he purchased his property.

With regard to private ways, our law provides:

> Whenever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way.

OCGA § 44-9-54.

The owner of a servient estate who wants to abolish a private way has only two legal options: 1) take legal steps to have the private way abolished, OCGA § 44-9-54; or 2) successfully negotiate with the holder of the private way. Kern did neither. According to Kern's brief filed with this court:

> For months the parties negotiated fruitlessly. While Kern built the new driveway and prepared the property all around the [private way] Thomason refused either to accept an alternate route or file to enjoin the ongoing development of the property. Finally, on March 23, 1987, Kern notified Mr. Thomason that it intended to remove the [private way], and it did so.

Kern's brief at p. 3.

There was no requirement that Mr. Thomason file to enjoin the ongoing development of *Kern's property.* First, OCGA § 44-9-54 forbids Kern from interfering with Mr. Thomason's private way. Second, the parties were negotiating and only the property around Mr. Thomason's private way was being developed. The private way was not ob-

structed until March 23, 1987. According to Mr. Thomason's affidavit he had "uninterrupted use of the private way through and including the morning of March 23, 1987." On that day he advised his attorney that the private way had been obstructed and "he authorized his attorney to file suit." The action was filed on April 24, 1987. There was only a 31-day period from the time his private way was obstructed until he filed for injunctive relief, damages, attorney fees, and expenses.[3]

With regard to laches, our law provides:

> Equity gives no relief to one whose *long delay* renders the ascertainment of the truth difficult, even when no legal limitation bars the right. [Emphasis supplied.]

OCGA § 23-1-25.

The ascertainment of the truth is not difficult. Kern knew the private way crossed the property it purchased. Kern knew the private way was still in use when it obstructed it. Kern admitted to this Court that it negotiated for months with Mr. Thomason while it continued to go forward with development of its property. Certainly the above totally negates any claim that there was any long delay that rendered the ascertainment of the truth difficult.

The ascertainable truth is Mr. Thomason has a private way obstructed by Kern. Kern had notice of the private way; Kern did not take any legal steps to attempt to abolish the private way or successfully negotiate for it before resorting to the "Rule do." Kern blatantly violated the law. OCGA § 44-9-54.

Once there has been a finding that a private way has been obstructed, the court *shall* order the obstruction removed.

> If it appears that the private way has been in continuous, uninterrupted use for seven years or more and no steps were taken to prevent the enjoyment of the same, the judge *shall* grant an order directing the party or parties so obstructing or otherwise interfering with the right of way to remove the obstructions or other interference within 48 hours; and, if the party or parties fail to remove the obstruction, the judge

---

[3] Mr. Thomason could have filed an action in the probate court of his county to have the obstruction removed, OCGA § 44-9-59; however, he was seeking more than removal of the obstruction; he was seeking in addition damages, attorney fees, and expenses. "[W]here there are other grounds for equity jurisdiction, such as the avoidance of a multiplicity of suits, equity will exercise jurisdiction and grant full relief even though obedience to the injunction might require the performance of an act such as the removal of an obstruction." *Haney v. Sheppard*, 207 Ga. 158, 161 (60 SE2d 453) (1950); *Ozbolt v. Miller*, 206 Ga. 558 (57 SE2d 601) (1950).

124

*shall* issue a warrant commanding the sheriff to remove the obstructions immediately. [Emphasis supplied.]

OCGA § 44-9-59.

Since the trial court and this Court have already held that Mr. Thomason has a private way, and this Court has held that Kern cannot alter the private way, then all that is left for the trial court judge to do is to grant an injunction and order the obstructions removed, because laches is just not applicable in law or fact.

When could Mr. Thomason become guilty of laches?[4] Obviously not during the months of negotiations before the private way was obstructed. The law favors good-faith negotiations. Although this Court has held:

> A mere objection or protest, or a mere threat to take legal proceedings is not sufficient to exclude consequences of laches or acquiescence . . .

*Bacon v. Edwards*, supra at 103, it has *never* held that negotiations are not sufficient to exclude the consequences of laches. According to Kern's own admissions to this Court, the parties negotiated for months. Kern's brief, supra.

After admitting that it negotiated with Mr. Thomason, Kern then claimed that Mr. Thomason was barred by laches. "The equity of a party who has been misled is superior to that of the person who willfully misleads such party." OCGA § 23-1-12. Furthermore, "[h]e who would have equity must do equity. . ." OCGA § 23-1-10.

> It appears to be a general rule that "A delay is excusable when it was induced by the adverse party; he can not take advantage of a delay which he himself caused *or to which he has contributed*." [Emphasis supplied.]

---

[4] In determining whether there has been laches, various things are to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation thereof, whether during the delay the evidence of the matters in dispute has been lost or become obscure, whether plaintiff or defendant was in possession of the property in suit during the delay, whether the party charged with laches had an opportunity to have acted sooner, and whether the party charged with laches acted at the first possible opportunity. *To constitute the defense of laches the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible,* due to loss or obscuration of evidence of the transaction in issue, or where the lapse of time has been sufficient to create or justify a presumption against the existence or validity of the plaintiff's right, or to justify a presumption that, if the plaintiff was ever possessed of a right, it has been abandoned or waived, or has been satisfied. [Cit.] [Emphasis supplied.]

*C & S Nat. Bank v. Ellis*, 171 Ga. 717, 733 (156 SE 603) (1930).

*City of McRae v. Flosom*, 191 Ga. 272, 286 (11 SE2d 900) (1940). The fact that Kern went forward with its plans with full knowledge of the private way and in total disregard for the law, OCGA § 44-9-54, moots any contentions of laches. *McClure v. Davidson*, 258 Ga. 706, 709 (373 SE2d 617) (1988).

The equitable doctrine of laches is not applicable in light of the facts in this case. Mr. Thomason brought his action 31 days after his private way was illegally obstructed by Kern. The requirements of *Bacon*, supra, were not met during that 31-day period. An injunction will be denied a party who: 1) has been guilty of delay in asserting his rights; *and* 2) has allowed large expenditures to be made by the other party upon whom great injury would be inflicted by the grant of an injunction. *Bacon*, supra at 102. It appears from the record that Kern made large expenditures on its own property, not on the private way, before it obstructed Mr. Thomason's private way. There is little evidence of large expenditures of money after the private way was knowingly and illegally obstructed. Kern cannot complain. Kern, with full knowledge of the private way, made the choice to expend its funds to develop the property around the private way without attempting to take any legal steps to abolish the private way, OCGA § 44-9-54, before it illegally obstructed it. OCGA § 44-9-54.

The defendants in *Bacon*, supra, were required to remove the building they built on their *own property* despite the fact that the construction began in the fall of 1973, the suit was not filed until May 1974, and the building was almost complete. The *Bacon* defendants had only violated a restrictive covenant, they had not violated statutory law, OCGA § 44-9-54. The *Bacon* plaintiffs were not aided by a mandatory statute, OCGA § 44-9-59, as is the appellant in this case. The injunction was *granted* in *Bacon*, supra, just as it should be granted in this case.

The majority recognizes that Kern could not use the "Rule do" to abolish Mr. Thomason's private way nor could it force him to accept the new non-exclusive road they want him to use. As so aptly stated by the majority, Mr. Thomason cannot even be forced to accept a "gold-plated" private way. If Mr. Thomason is limited to damages, then a private condemnation without due process of law will have occurred.

DECIDED MARCH 2, 1989 —
RECONSIDERATION DENIED MARCH 30, 1989.

*Rolader & Rolader, Donald W. Rolader*, for appellant.
*Long, Aldridge & Norman, Lee Tarte, J. Allen Maines*, for ap-

pellee.