S93A0554. PRIME BANK v. GALLER et al.
(430 SE2d 735)

CLARKE, Chief Justice.

The superior court ordered Prime Bank to demolish a house under construction because the house was being built in violation of procedural requirement contained in a protective covenant. Prime Bank appeals. Appellant urges this Court to reverse the trial court order. We remand the case for further consideration by the trial court to determine if demolishing the house is the least oppressive means of remedying the violation.

The appellees purchased a lot in the Amanda Woods subdivision from the developer, Amanda Woods, Inc. Robert Carpenter was the principal shareholder and manager of Amanda Woods, Inc. The architect, Killy Kunimoto, designed all of the houses in the subdivision. Because of the relatively small size of the lots, the houses were built very close to one another. Mr. Kunimoto's challenge was to design the houses to fit in the subdivision with one another. At about the time they bought the lot, the Gallers contracted with Amanda Woods to build a house. The Gallers invested a great deal of money in the house which won an award for its design.

Restrictive covenants protect the property in the Amanda Woods subdivision. The Gallers relied upon these covenants to protect the value of their home. The covenants required the builder to obtain the approval of all plans by an architectural control committee (the "Committee") before construction began. Approval could be obtained by default where the plans were not rejected after 45 days from the date of submission to the Committee. In addition, the builder could make no changes after the Committee approved the plans, and construction could not be started until such approval was obtained.

Appellant Prime Bank provided a construction loan to Robert Carpenter to build a house on lot seven of the Amanda Woods subdivision immediately adjacent to the Gallers' lot. The plans for the house were submitted to the Committee, consisting of Mr. Carpenter, Mr. Kunimoto, and another builder in the development, Mr. Price. After the 45-day default period elapsed without objection, Mr. Carpenter obtained a construction loan from Prime Bank. Mr. Carpenter began construction on the house working from a "mirror image" plan submitted to the bank. He had taken the plans as designed by Mr. Kunimoto and submitted to the Committee and reversed them. When Carpenter submitted these plans to the bank, the notations on these "mirror-image" plans were backwards. After beginning work on the house, Mr. Carpenter went to Mr. Kunimoto and asked him to adjust the plans to reflect the reversed design. Prime Bank became the owner of the house and lot through a foreclosure sale after the death of Mr. Carpenter.

Mr. Galler filed this lawsuit because the house on lot seven did not fit into the design scheme of the neighborhood. Specifically, he contends that Mr. Carpenter changed the plans of the house after the original design was approved by the architectural control committee. Any changes in the plans after approval by the Committee are prohibited under the restrictive covenants. The houses in Amanda Woods are designed so that the windows of each house face one another, and the blank walls of each house also face one another. This design creates a kind of "courtyard" view for each resident while minimizing the impact of a large wall with few openings. The house on lot

seven, however, was changed so that the blank wall faces the Gallers' windows. In addition, its placement on the lot obscures the view to and from the house. The trial court found that the house violated the restrictive covenants and ordered that the house be demolished. Prime Bank appeals from the decision on several grounds.

1. Where the trial court makes findings of fact, they shall not be set aside unless clearly erroneous. OCGA § 9-11-52. There is sufficient evidence to support the trial court's finding that Mr. Carpenter violated the requirements of the restrictive covenant. The trial court found that the original plans submitted by Mr. Kunimoto were approved by default. Since there is evidence in the record to support such a finding, we will not disturb it on appeal. *Harp v. Winkles*, 255 Ga. 42 (335 SE2d 292) (1985); *Brook Forest Enterprises v. Paulding County* 231 Ga. 695 (203 SE2d 860) (1974).

2. Contrary to appellant's second and third enumerations of error, the breach of the covenant was not one that occurred at a single point in time prior to their acquisition of the property. The breach is a continuing breach of building the house according to plans not approved by the Committee. Since the violation of the restrictive covenant is a continuing one, appellant's argument that it is not liable for its predecessor's errors are without merit. As the appellant admits, the covenants run with the land. The bank is chargeable with notice of the existence of the recorded protective covenants. *Dooley v. Savannah Bank &c. Co.*, 199 Ga. 353 (34 SE2d 522) (1945) (where covenants are part of a general scheme of a subdivision development, all purchasers are charged with notice since the covenant was contained in deed from common grantor).

3. Laches is ordinarily a question of fact properly submitted to a factfinder. *Thomason v. Kern &c.*, 259 Ga. 119, 120 (376 SE2d 872) (1989). The trial court found that appellees were not guilty of laches. They approached Mr. Carpenter early in the construction of the house to question him about the potential problems with the covenant. They brought their complaints to the attention of the appellant. This court will not disturb the findings of fact of the trial court that are not clearly erroneous. OCGA § 9-11-52.

4. Equitable relief is generally a matter within the sound discretion of the trial court. *McMichael v. Atlanta Envelope Co.*, 151 Ga. 776 (108 SE 226) (1921). The action of the trial court should be sustained on review where such discretion has not been abused. Id. However, in determining whether there has been an abuse of discretion, the conveniences of the parties cannot be ignored. *Jones v. Lanier Dev. Co.*, 188 Ga. 141 (2 SE2d 923) (1939).

In *Dawson v. Wade*, 257 Ga. 552 (361 SE2d 181) (1987), the defendant had opened a canal off of a creek upstream from the plaintiff. The trial court granted an injunction ordering the defendant to close

off the canal and to fill it back in. We remanded the case for a determination of whether it was necessary to fill in the canals to restore and maintain the creek banks.

> "The injunction should always be so worded as not to impose on defendant any greater restriction [burden] than is necessary to protect the plaintiff from the injury of which he complains."

Id. (quoting Henry L. McClintock, Principles of Equity, p. 392 (1948)). In this case, we find that there was evidence in the record that the plaintiffs' complaints may be alleviated by less drastic measures. According to the architect, Mr. Kunimoto, the house may be altered to conform to plaintiffs' demands. Indeed, plaintiffs make an alternative prayer for relief for abatement of the nuisance, asking that "the house be modified in such as [sic] fashion as would be acceptable to the Gallers." Transcript of September 10, 1992 at 10.

Therefore, we remand this case to the trial court for a careful consideration of the conveniences of the parties. A mandatory injunction is an extraordinary remedy, one of the most powerful a court can issue. It is for that reason called the "strong arm of equity." *Cathcart Van &c. Co. v. Atlanta*, 169 Ga. 791, 793 (151 SE 489) (1930) (citing *Enfield Toll Bridge Co. v. Conn. River Co.*, 7 Conn. 28 (1828)).

> " 'There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or [is] more dangerous in a doubtful case, than the issuing of an injunction.' "

Id. (quoting *Cullman Property Co. v. H. H. Hitt Lumber Co.*, 77 S 574, 577 (1917)). It should be crafted in a manner that is the least oppressive to the defendant while still protecting the valuable rights of the plaintiff. See McClintock, Principles of Equity, supra. With some evidence that another less exacting alternative exists, the trial court should give further consideration to that possibility before granting the most extreme remedy.

*Remanded with direction. All the Justices concur, except Hunt, P. J., Fletcher and Carley, JJ., who dissent.*

Carley, Justice, dissenting.

"Covenants running with the land must be strictly construed and clearly established. . . ." *Columbia Valley Rec. Cntr. v. Massie*, 223 Ga. 151, 152 (1) (154 SE2d 215) (1967). In the instant case, the trial court found that a restrictive covenant running with the land had been violated by appellant-defendant's predecessor in title and a majority of this Court now affirms that finding. It is my opinion, how-

ever, that, when the restrictive covenant is strictly construed, a violation thereof by appellant's predecessor in title has not been clearly established. Accordingly, I would reverse the judgment of the trial court on the ground that appellee-plaintiffs were entitled to no equitable relief whatsoever and I must, therefore, respectfully dissent to the majority's mere remand with direction.

Appellees' sole contention is that the residence on Lot Seven of the Amanda Woods Subdivision is being constructed in violation of the following restrictive covenant:

> No building . . . shall be erected, placed or altered on any Lots until the building plans and specifications and a site plan showing the locations of such building . . . have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision . . . by an [A]rchitectural [C]ontrol [C]ommittee. . . .

It is undisputed that no *written* approval from the Architectural Control Committee was ever secured for the residence. However, the restrictive covenant *also* provides as follows:

> In the event the Committee . . . fails to approve or disapprove such design and location within forty-five (45) days after said plans and specifications have been submitted to it, such approval will not be required and this covenant will be deemed to have been fully complied with.

In my opinion, the undisputed evidence in the instant case demands a finding that the design and location of the residence being constructed on Lot Seven of the Amanda Woods Subdivision is not violative of the restrictive covenant, because the Architectural Control Committee failed to act within 45 days after the plans and specifications for that residence had been submitted to it.

The confusion which exists in the instant case arises from the fact that the late Mr. Robert Carpenter, who was appellant's immediate predecessor in title, and Mr. Killy Kunimoto, who drew up the original architectural plans for the residence, each occupy *two* different capacities. Carpenter was not only the former owner of Lot Seven. He was also a member of the Architectural Control Committee. Kunimoto is not only the architect who drew up the original plans for the residence. He was likewise a member of the Architectural Control Committee. In his capacity as the former *owner* of Lot Seven, Carpenter requested that Kunimoto, in his capacity as an *architect*, draw up plans for the residence. Kunimoto did submit plans for Carpenter's consideration. However, these original plans were *never* submitted to Kunimoto and Carpenter in their capacities as members of the

Architectural Control Committee. They were submitted by Kunimoto, in his capacity as an architect, for approval by Carpenter, in his capacity as the owner of Lot Seven. Obviously, plans *cannot* be deemed to have been submitted *to* the Architectural Control Committee *unless and until* they have first been selected by the owner of the property as the plans for the residence that will actually be constructed. It is undisputed that Carpenter, in his capacity as the owner, did *not* accept Kunimoto's original plans for the residence to be constructed on his property. Instead, Carpenter, acting without Kunimoto's knowledge, had those plans reversed and determined that the residence on his property would be constructed in accordance with those reversed plans. Thus, it is *only* the reversed plans which were ever approved by the owner and it is *only* those plans which could ever have been submitted to the Architectural Control Committee. Accordingly, construction of the residence in accordance with the reversed plans would not be in violation of the restrictive covenant if Carpenter and Kunimoto, in their capacities as members of the Architectural Control Committee, failed to approve or disapprove those reversed plans within 45 days after said plans had been submitted to them.

In the 45 days after Carpenter had determined, in his capacity as owner, to construct the residence in accordance with the reversed rather than the original plans, he did not, in his capacity as a member of the Architectural Control Committee, either specifically approve or disapprove the reversed plans for construction on Lot Seven. His actions certainly in no way manifest any disapproval of such plans. To the contrary, he secured a construction loan from appellant and began to build the residence in accordance with the reversed plans. Accordingly, the failure of Carpenter, in his capacity as a member of the Architectural Control Committee, to have given written approval of the reversed plans would demonstrate no violation of the covenant.

The evidence is undisputed that, at some point prior to construction, Kunimoto was presented with a copy of the reversed plans, but it is unclear as to when it was that he first became aware of Carpenter's intention to build the residence in accordance with the reversed rather than the original plans. Appellees urge that Kunimoto did not have actual knowledge of Carpenter's intentions *more* than 45 days prior to the commencement of construction and that the restrictive covenant can never be satisfied if construction was commenced by Carpenter *less* than 45 days after the reversed plans had been submitted to the Architectural Control Committee. However, once Kunimoto first became aware of the fact that Carpenter intended for the house on Lot Seven to be built in accordance with the reversed plans, Kunimoto could not, in his capacity as a member of the Architectural Control Committee, simply allow construction to proceed and later

contend that the covenant had not been satisfied by his failure to approve or disapprove the design and location of the residence within 45 days.

> "If . . . a party having an interest to prevent an act being done has full notice of its having been done, and acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have had if it had been done by his previous license."

(Emphasis omitted.) *Smith v. Hanna Mfg. Co.*, 68 Ga. App. 475, 487-488 (23 SE2d 552) (1942). Since it is undisputed that Kunimoto did not approve or disapprove the reversed plans within the 45 days following his actual knowledge that the residence was to be constructed in accordance with the reversed plans and that construction of the residence in accordance with those plans was allowed to continue without his objection, the evidence demands a finding that Kunimoto, in his capacity as a member of the Architectural Control Committee, would be estopped to assert a violation of the restrictive covenant.

The covenant runs with the land and appellees can enforce that covenant *if* it was breached. However, the covenant was breached *only* if the Architectural Control Committee *itself* could successfully assert that it had *not* failed to approve or disapprove the design and location of the residence on Lot Seven within 45 days after the plans and specifications had been submitted to it. Since the evidence demands a finding that the Architectural Control Committee *had* failed to approve or disapprove the design and location of the residence on Lot Seven within 45 days after the plans and specifications had been submitted to it, the covenant was *not* breached and appellees are entitled to *no* equitable relief.

I am authorized to state that Presiding Justice Hunt and Justice Fletcher join in this dissent.

Decided June 21, 1993 —<br>Reconsideration denied July 15, 1993.

*Carter & Ansley, Anthony J. McGinley, Kenton J. Coppage*, for appellant.

*McKee & Barge, Patrick W. McKee*, for appellees.