S01A1699. BRUCE v. WALLIS.
(556 SE2d 124)

HUNSTEIN, Justice.

Delana Bruce appeals from an order abating a nuisance on her property, challenging the propriety of the relief granted. Finding that the trial court manifestly abused its discretion, we reverse.

1. Ralph Wallis owns property with a pond located on it for raising fish. Wallis's property is across a county road from Bruce's farm, where she has trained, bred, and boarded horses for 25 years. Wallis filed a complaint against Bruce to abate a nuisance contending that manure on her property created noxious and offensive odors and that the manure drained into Wallis's pond and killed his fish. Bruce, who

was pro se at the time, was not present at the hearing when Wallis introduced photographs and testimony that overgrazing of the land by Bruce's horses had increased the flow of water onto Wallis's land, washing horse manure into the pond. After the court found both the manure and the horses constituted a nuisance, Bruce was contacted by telephone and arrived to testify that the manure pile had been removed and that it was the three-month drought during the summer of 2000 that had stripped her land of grass and killed Wallis's fish. The trial court granted a temporary injunction requiring Bruce to reduce the number of animals weighing in excess of fifty pounds on her property to three animals within 30 days. Bruce then obtained counsel and filed an emergency motion requesting that the court modify its order, attaching affidavits setting forth the harm to her horse business and the potential danger to her horses that would be caused by the dispersal order. The motion was denied in an order in which the trial court appointed a National Resource Conservation Service employee to study the situation[1] and allowed the parties to submit affidavit evidence.

Bruce timely submitted two additional affidavits. The first was from a certified civil engineer who opined that the steps Bruce had taken to prevent sediment from her property from being washed off onto Wallis's property were "more than adequate to control any possible silt runoff from Ms. Bruce's property"; that she is "using the best management practices to control the run-off"; and that "there is no runoff coming from Ms. Bruce's property other than what could normally be expected." The second affidavit was from a small pond businessman with a bachelor of science degree in wildlife biology and a masters degree in fisheries who opined that because of the drought creating low water levels and large amounts of unoxygenated pond water, the fish kill in Wallis's pond was probably due to the sudden displacement of the unoxygenated water during a heavy rainfall which led to the suffocation of the fish. He also found no evidence that the fish died because of "nutrient loading," i.e., manure or animal waste draining into the pond, and that the amount of siltation in Wallis's pond was not unusual in a pond of its age.

At the hearing, the court-appointed expert testified that he did not look into the pond issue at all because he possessed no expertise in that area and that he had mainly looked at Bruce's property and

---

[1] The trial court further provided that the expert and his staff "shall not be subpoenaed, deposed, required to prepare or furnish written or oral reports in advance of hearing, nor made the subject of third party discovery requests, since as federal employees, their service to the Court in voluntarily undertaking this study to aid in the deposition [sic] of this state law controversy is not intended to interfere with their other governmental duties by subjecting them to the usual time-consuming rigors imposed o[n] a party's chosen expert witness."

worked with her to prepare a conservation plan for her property. When questioned about the plan's design to catch the sediment before it left Bruce's property, he responded that the purpose of his plan was to stop the erosion on Bruce's property "so that it doesn't start eroding in the first place." He then discussed the recommendations he proposed to Bruce, including rotational grazing and the moving of a fence where the horses had made a path and compacted the ground. At the close of this testimony, Bruce's counsel pointed out to the trial court that insofar as Wallis's property was concerned, Bruce's affidavits established that her action had alleviated the siltation problem and eliminated the manure odor. The trial court, however, reaffirmed its earlier ruling after stressing the conservationist's testimony that Bruce had "no erosion plan in force" and finding that the steps Bruce had taken "are intrinsically a temporary solution" and "not necessarily an answer for Mr. Wallis."

"Equitable relief is generally a matter within the sound discretion of the trial court. [Cit.] The action of the trial court should be sustained on review where such discretion has not been abused. [Cit.]" *Prime Bank v. Galler*, 263 Ga. 286, 288 (4) (430 SE2d 735) (1993). However, a trial judge "manifestly abuses his discretion when he grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity; such judgment 'is so clearly wrong as to amount to an abuse of discretion.' . . . [Cit.]" *Teachers' Retirement System v. Forehand*, 234 Ga. App. 437, 438-439 (506 SE2d 913) (1998). See also *Ebon Foundation v. Oatman*, 269 Ga. 340 (3) (498 SE2d 728) (1998) (trial court's discretion will not be disturbed unless it is abused or there is no evidence to support the ruling).

In the instant case, Bruce presented uncontroverted evidence that she had alleviated the nuisance caused by the rainwater runoff of sediment and/or manure from her property into Wallis's pond. The affidavit by Bruce's civil engineering expert opining that there is no erosion problem on Bruce's property affecting Wallis's property was not inconsistent with the court-appointed expert's testimony that there is an erosion problem on Bruce's property. Rather, the trial court's insistence that Bruce implement an erosion plan to eliminate all erosion on her property was overbroad and unwarranted under the facts in this case. An injunction should not " 'impose on defendant any greater restriction (burden) than is necessary to protect plaintiff from the injury of which he complains.' [Cit.]" *Dawson v. Wade*, 257 Ga. 552, 554 (4) (361 SE2d 181) (1987). There was no evidence that Wallis was not protected from the injury of which he complained by the steps taken by Bruce. On the contrary, there was uncontroverted evidence that the problem had been alleviated. Although the trial court stated that Bruce's actions were "intrinsically a temporary

solution" which could not adequately abate the nuisance alleged, the record contains no evidence to support that conclusion.

> A mandatory injunction is an extraordinary remedy, one of the most powerful a court can issue. It is for that reason called the "strong arm of equity." [Cit.] " 'There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or [is] more dangerous in a doubtful case, than the issuing of an injunction.' " [Cit.]

*Prime Bank v. Galler*, supra, 263 Ga. at 289. In light of the uncontroverted evidence presented to the trial court, we agree with Bruce that the trial court abused its discretion in ordering the removal of all but three of her horses.

2. Our holding in Division 1, supra, renders it unnecessary for us to reach Bruce's remaining enumeration of error addressing the trial court's appointment of the expert witness.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 30, 2001.

*Philip S. Coe*, for appellant.
*Thomas M. Martin*, for appellee.