A03A0522. DBL, INC. v. CARSON et al.
(585 SE2d 87)

RUFFIN, Presiding Judge.

Edwin Carson, Brenda Rotureau, Carol Bowman, and Hattie Carson (collectively, "landowners") sued DBL, Inc., the company which operates Sail Harbor Marina, alleging, inter alia, breach of contract and trespass. The landowners sought both damages and injunctive relief. DBL subsequently moved to dismiss the complaint. Pending final resolution of the claim, the trial court enjoined DBL from operating a marina "on docks which front the [landowners'] property." The trial court also denied DBL's motion to dismiss. DBL appeals both orders. For reasons that follow, we affirm in part and reverse in part.

The relevant facts demonstrate that the landowners own real property adjacent to Turner Creek, which evidently is an inter-coastal waterway. In 1972, the landowners leased the property to DBL for use as a marina ("upland lease").[1] The upland lease required

---

[1] The parties who entered the lease, John Carson and Baker Yachts, are predecessors in interest to the current landowners and DBL. For the sake of clarity, we refer to the current parties.

DBL to obtain all necessary permits in order to erect and maintain the docks. At the time the upland lease was entered, the property already had two rows of floating docks, a bridge connecting the docks to the land, and a ramp to the water. DBL entered subsequent upland leases with the landowners, and the final upland lease terminated on April 30, 2002.

In 1996, DBL applied to the State of Georgia to lease the state-owned river bottom adjacent to the leased upland property ("water bottom lease"). Under the Coastal Marshlands Protection Act of 1970,[2] DBL was eligible to lease the river bottom by virtue of its leasehold in the landowners' upland property.[3] The State granted water bottom leases for two parcels, which expire in December 2007 and February 2009, respectively.

Just before the expiration of the upland lease, DBL removed a bridge, floating docks, and a ramp that connected DBL's docks to the landowners' property, and DBL disconnected an electrical system, which provided electricity to the docks. The landowners filed a complaint to enjoin DBL from removing any such structures, which the landowners claim are theirs. The landowners also requested declaratory relief regarding ownership of the structures. In an amended complaint, the landowners added claims of breach of contract, trespass, and conversion. In addition, the landowners sought to invalidate DBL's water bottom lease and enjoin it from operating the marina on the water that fronted their property.[4] According to the landowners, DBL's water bottom lease is void because DBL no longer has a lease for their adjacent upland property.

DBL filed two motions to dismiss the complaint, one asserting lack of venue and one contending that the landowners lacked standing to challenge the validity of the water bottom lease. Following a hearing, the trial court denied the motions to dismiss and entered an interlocutory order prohibiting DBL from operating the marina in front of the landowners' property. This appeal ensued. In two enumerations of error, DBL argues that the trial court erred in denying its motions to dismiss. DBL also maintains that the trial court abused its discretion by enjoining it from operating the marina. We address each argument in turn.

1. According to DBL, venue is improper in Chatham County, where the upland property is located. As DBL's registered agent is in Bulloch County, the company contends that, under OCGA § 14-2-510

---

[2] See OCGA § 12-5-280 et seq.

[3] See OCGA §§ 12-5-287 (a), (b); 12-5-282 (6) (defining "eligible person").

[4] Although DBL removed some docks that fronted the landowners' property, other docks remain in the waterway. Evidently, DBL can access those docks from another parcel of land, and it plans to continue operating the marina indefinitely.

(b) (1), suit should have been filed in the Superior Court of Bulloch County. We disagree.

In addition to their claim for equitable relief, the landowners also allege breach of contract. OCGA § 14-2-510 (b) (2) provides, in pertinent part, that for the purpose of establishing venue in a contract claim, a corporation resides "in that county [in which] the contract sought to be enforced was made or is to be performed, if it has an office and transacts business in that county." Here, the lease agreement was signed in Chatham County, and DBL operates a business in that county. And, if venue is proper as to one claim, the trial court may, in its discretion, entertain other claims arising from the transaction even if venue for other claims ordinarily lies elsewhere.[5] As our Supreme Court noted, "[t]his rule clearly promotes judicial economy, as it avoids forcing the plaintiff to bring related claims in separate counties."[6] Here, we find no abuse of discretion in the trial court's ruling that venue is proper in Chatham County.[7]

2. In its second enumeration of error, DBL asserts that the trial court erred in concluding that the landowners have standing to challenge the validity of the water bottom lease. DBL cites *Jones v. Oemler*[8] for the proposition that only the State, which granted the lease, has standing to challenge the lease's validity. Again, we disagree.

Although this case does not involve zoning, we find the standing analysis applied in such cases to be appropriate as zoning cases also involve government action that threatens property owners' full use and enjoyment of their property.[9] Thus, in order to establish standing, the landowners must demonstrate that they have a substantial interest that is affected by the government action of granting the lease.[10] The landowners also must show that the government action "would cause them special damage or injury not common to all property owners similarly situated."[11] "The term 'similarly situated' refers to persons in the general community who may merely suffer inconvenience and excludes those persons who stand to suffer damage or

---

[5] See *Natpar Corp. v. E. T. Kassinger, Inc.*, 258 Ga. 102, 104 (1) (365 SE2d 442) (1988).

[6] Id.

[7] See id.

[8] 110 Ga. 202 (35 SE 375) (1900).

[9] See *AT&T Wireless PCS v. Leafmore Forest Condo. Assn. &c.*, 235 Ga. App. 319, 320 (1) (509 SE2d 374) (1998).

[10] See *Moore v. Maloney*, 253 Ga. 504, 506 (1) (321 SE2d 335) (1984) (property owners had standing to challenge zoning decision); *AT&T Wireless*, supra (property owners had standing to challenge the issuance of building permit); *Preservation Alliance of Savannah v. Norfolk Southern Corp.*, 202 Ga. App. 116, 117-118 (413 SE2d 519) (1991) (civic association lacked standing to challenge application for demolition permit).

[11] (Punctuation omitted.) *Moore*, supra.

injury to their property which derogates from their reasonable use and enjoyment of it."[12]

As waterfront property owners, the landowners have a right to equitable access to tidelands and tidal waters that adjoin their property.[13] In recognition of this right, OCGA § 12-5-287 (e) provides that any lease of state-owned water bottoms

> shall protect the interest of owners of marshland and high land adjoining the high land of the lessee upon which the lessee's eligibility for lease was based to a right of access to the state owned marshland or water bottoms adjoining the state owned marshland or water bottoms leased to the applicant; provided, however, said owners of adjoining high land may assign their rights in writing in favor of the applicant and such written assignment may be used to determine the percentage of landward boundary required for eligibility to lease the state owned marshland and water bottoms described in the application.[14]

Accordingly, the landowners have a property interest in the water fronting their property, which the law protects. And the landowners here have shown that this interest is being harmed by the continued operation of the marina in front of their property because the docks obstruct their view of the water and impede one landowner's access to his boat. Accordingly, we see no bar to the landowners bringing suit to protect their rights.[15]

*Jones v. Oemler* does not require a different result. In that case, Oemler leased water bottoms from the State to cultivate oysters, and he sought to enjoin members of the general public from trespassing and taking oysters. The defendants responded, asserting that the lease had been forfeited. In dicta, the Supreme Court reasoned that only the State had authority to institute proceedings to declare such forfeiture.[16]

Here, unlike in *Oemler*, the challengers are property owners whose interests are being infringed upon, rather than members of the general public. And the State may yet be made a party to the instant suit as the trial court ordered the "parties to file briefs on the issue [of] whether the State of Georgia Department of Natural Resources could be and should be joined as a necessary party."

---

[12] *AT&T Wireless*, supra.
[13] See *Dorroh v. McCarthy*, 265 Ga. 750, 752 (3) (462 SE2d 708) (1995).
[14] The trial court noted that an issue remains as to whether the landowners intended to assign their rights to DBL under this Code section through the upland lease.
[15] See *AT&T Wireless*, supra.
[16] See *Oemler*, supra at 212-213 (3).

Accordingly, under the facts of this case, the concerns outlined in *Oemler* are simply not implicated.[17]

3. In its final enumeration of error, DBL contends the trial court abused its discretion by enjoining it from operating the marina in front of the landowners' property pending final resolution of this claim. We agree.

The granting of an interlocutory injunction rests in the sound discretion of the trial court, and we will not reverse a trial court's decision absent manifest abuse of discretion.[18] However, our Supreme Court has noted that "[t]his power [to grant injunctions] shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to."[19]

An interlocutory injunction serves to prevent irreparable harm and to maintain the status quo until the merits of the underlying claim are decided.[20] And "[a]n injunction should not impose on defendant any greater restriction (burden) than is necessary to protect plaintiff from the injury of which he complains."[21] "In short, there must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy."[22]

In this case, the trial court ruled that in order

[t]o accommodate the parties' competing interests in the water bottom and the plaintiffs' rights, DBL shall not operate a marina on the docks which front the plaintiffs' property. . . . The operation of a commercial marina, without the consent of the upland owner, along the entire frontage of the upland owner's property presents a substantial issue as to the rights of waterfront owners in Georgia.

Although we commend the trial court on its well-reasoned order, we are unable to agree that enjoining DBL from operating the marina was proper.[23] The injunction did not serve to maintain the status quo. And we fail to see any irreparable harm to the landowners by virtue of DBL's continued operation of the marina. Indeed, the

---

[17] DBL also contends that, because the landowners failed to object to the State's granting of the lease in 1996, this issue is res judicata. However, DBL fails to demonstrate that this issue was raised before the trial court, and thus, it is waived on appeal. See *In the Interest of B. A. S.*, 254 Ga. App. 430, 441 (8) (563 SE2d 141) (2002).

[18] See *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145, 146 (1) (401 SE2d 515) (1991).

[19] (Punctuation omitted.) Id.

[20] See id.

[21] (Punctuation omitted.) *Bruce v. Wallis*, 274 Ga. 529, 531 (1) (556 SE2d 124) (2001).

[22] (Punctuation omitted.) *Kennedy*, supra.

[23] As the parties do not challenge any other aspect of the injunctive relief, we limit our discussion to the order enjoining DBL from operating the marina.

marina has been operating in front of their property for years. Under these circumstances, there is no urgency requiring that DBL's business be enjoined, and we therefore conclude that the trial court abused its discretion in granting the injunction.[24]

*Judgment affirmed in part and reversed in part. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 11, 2003 —
RECONSIDERATION DENIED JULY 10, 2003 — 

*H. Lehman Franklin, Jr., Elizabeth A. Branch,* for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Assistant Attorney General, Duffy & Feemster, Dwight T. Feemster, Matthew M. Bush, Ellis, Painter, Ratterree & Bart, Tracy A. O'Connell, Edward L. Newberry,* for appellees.